# Richmond.

## CARR v. BRANCH.

### January 10th, 1889.

1. CONVERSION OF REALTY INTO PERSONALTY.—Where testator devises real estate to be sold and proceeds divided, the same is regarded in equity as personal property, though no sale has been effected. *Harcum* v. *Hudnall*, 14 Gratt. 369.

2. COUNTY COURTS—*Infants—Mortgage of Personalty.*—Decree of county court rendered previous to July 1st, 1873, authorizing trustee holding infants' personalty to execute a trust deed thereon to secure a loan effected in order to free it from liens, was within the jurisdiction of said court and valid.

3. TRUSTEES—*Infant Beneficiaries—Election—Conversion.*—Neither the trustee nor the infant *c. q. ts.* can elect to take land devised to be sold as land. And a conveyance thereof by the executors to a stranger who immediately conveys it to the trustee for the purpose of vesting the latter with the legal title, cannot operate as a conversion, or an election to take the property as land.

4. TRUST DEED—*Subsequent Election.*—A trust deed, valid when executed, cannot be affected by subsequent election; but such election must be made in subordination to the deed.

5. EXECUTORS, &c.—*Descriptio Personæ.*—An executor, trustee, or any person acting *in autre droit,* who covenants in his own name, and yet adds to his signature the word, "executor," "agent," "trustee," etc., is personally liable, the addition being regarded as a mere description of the person, unless he was recognized as contracting in his representative capacity.

6. TRUST DEED—*Bond—Variance—Case at Bar.*—Trustee, who was also executor, and his co-executor executed the bond for said borrowed money, with the addition of the word "executors" to their signatures, while the trust deed to secure said bond was executed by them individually, and described said bond as having been executed by the trustee "as trustee," and by his co-obligor individually;

HELD:

> The trust deed is valid as security for the money loaned, the execu-
> tors being liable on the bond individually.

Appeal from decree of circuit court of city of Petersburg, rendered 20th January, 1887, in the chancery suit wherein Edwin B. Branch and his infant brothers and sisters by him as their next friend, are complainants, and the Life Association of America, John W. Friend, R. K. M. Friend, Miles B. Branch, and others are defendants.

In January, 1870, Edwin W. Friend died, leaving a will whereby, after making certain devises and bequests, he directed the residue of his estate, real and personal, to be sold by his executors upon such terms, in such manner, and at such time as they might deem best, and the proceeds thereof to be divided among his four children, of whom one was Mrs. Mary O. Branch. By a codicil to the will the legacy given in the body of the will to Mrs. Branch was given to her and her children, and Miles B. Branch, her husband, was designated as their trustee. The executors qualified without security, the will requiring none.

Soon after the testator's death, a creditor's suit was instituted in the hustings court of the city of Petersburg, to settle the estate, and in that suit debts against the estate were reported amounting to a sum exceeding $2,000. And for that sum an execution against the executors personally was ordered to be issued, which was duly returned "no effects."

A part of the residue directed by the testator to be sold consisted of a tract of land called "Burlington," situate in Dinwiddie county, and containing about three hundred and fifty acres. This land was conveyed by the executors to William A. Bragg, in January, 1871, who, on the same day, conveyed it to R. K. M. Friend and Miles B. Branch, to the latter as trustee for his wife and children. These conveyances, however, were merely formal, the object being to vest the legal title to the land in the grantees in the last mentioned deed, in the proportion of 259-470 to Friend and 211-470 to Branch, trustee.

' The execution above-mentioned having been returned " no effects," and there being no personalty belonging to the estate in the hands of the executors, out of which the execution creditors' debts could be satisfied, the hustings court of Petersburg ordered a sale of the Burlington farm for the purpose of paying the debts; whereupon a bill was filed by Miles B. Branch, trustee for Mrs. Branch and her children, in the county court of Dinwiddie county, then having chancery jurisdiction, in which, after setting forth, substantially, the foregoing facts, he averred that a sale of the land would be injurious to the interests of his *cestuis que trust,* and prayed that, in order to prevent a sale, he be authorized to borrow a sufficient sum of money to pay the debts, and to secure the loan by a mortgage or deed of trust on the land. The *cestuis que trust* were made parties defendant to the suit, and at the August term, 1872, a decree was entered authorizing the trustee to borrow the money, and to execute a bond or bonds therefor, and to secure the same by a deed of trust on " Burlington," the money, when borrowed, to be applied to the payment of the debts aforesaid.

It appears from the record that on the 14th of October, 1872, the said Miles B. Branch and R. K. M. Friend, as executors of the testator, executed their joint bond to the Life Association of America, a life insurance company incorporated under the laws of the State of Missouri, for the sum of $2,500, payable five years after the date thereof, and also their bonds for the *annual interest;* and on the same day they individually executed and acknowledged a deed of trust on the land to secure the said bonds. The money was paid over by the association, and was faithfully applied to the payment of the debts aforesaid. It also appears that on the 27th of September, 1872, a policy of insurance for $5,000 was issued on the life of the said R. K. M. Friend by the said association.

Subsequently the said association was adjudged by a decree of a court of competent jurisdiction in the State of Missouri to be insolvent, and it was accordingly dissolved, and its assets,

pursuant to the laws of Missouri, were transferred to the then superintendent of the insurance department of that State, whose lawful successor the appellant is. The said policy of insurance has never been paid. It was surrendered some time after it was issued, and a policy for $4,000 taken in its stead, which in turn was substituted by a paid-up policy for $436, payable on the 1st of November, 1927, and which is alleged to be worthless.

The bond for $2,500, above mentioned, not having been paid at maturity, the trustees in the deed of trust were directed to sell the land conveyed thereby, whereupon the complainants in the court below filed their bill for an injunction. The bill is in the name of Edwin B. Branch (one of the children of Mrs. Branch, who is now dead), and who sues in his own right—he having attained his majority in 1882—and as next friend for the other children, who are still infants. The bill prays for an injunction on the ground that the deed of trust was executed without lawful authority, and is therefore void; and also on the ground that the policy of insurance on the life of the said R. K. M. Friend and the loan of $2,500 attempted to be secured by the deed, constituted one transaction, and that the association having become insolvent and unable to pay its liabilities, the consideration for the transaction has to that extent failed. It is also charged that the association was, in fact, insolvent when the policy was issued, and that its insolvency was fraudulently concealed, etc.

An injunction was awarded according to the prayer of the bill, which was made perpetual by the decree complained of, so far as the interests of the children of Mrs. Branch in the land are concerned, and dissolved as to the interest therein of the said R. K. M. Friend; and commissioners were appointed to make sale of the last mentioned interest, and to make report, etc. It is from this decree that an appeal was allowed by one of the judges of this court upon the application of Carr, superintendent as aforesaid.

*Davis & McIlwaine,* for appellant.

*R. H. & W. H. Jones, W. R. McKenny* and *J. Lyon,* for appellees.

LEWIS, P. (after stating the case), delivered the opinion of the court.

The testator, after making sundry specific bequests, says: " I desire the residue of my estate, real and personal, to be sold by my executors   *   *   at such time as they may deem best," and the proceeds to be divided, etc. This language clearly manifests the intention of the testator, and amounts to an imperative direction that a sale be made. The question of conversion, according to all the authorities, depends on the intention of the testator, which need not be expressly declared, but may be derived from the general effect of the will. Hence, it has been held that where a testator authorizes his executors to sell real estate, and it is apparent from the general provisions of the will that he intended such estate to be sold, the doctrine of equitable conversion applies, although the power of sale is not in terms imperative. To the same effect is the decision of this court in *Ropp* v. *Minor,* 33 Gratt. 97, in which case Judge Burks, speaking for the court, said that the intention to convert may be implied without express words directing a sale. It is sufficient, he said, if such intention be clear.

The doctrine of equitable conversion, therefore, applies to the present case, and hence the tract of land called " Burlington," which constitutes in part the residue directed by the testator to be sold, is to be considered, for the purposes of the will and of this case, as personal estate. This would seem to be too plain to admit of doubt; for since the case of *Fletcher* v. *Ashburner,* 1 Bro. C. C. 497 (1 Lead. Cas. Eq. 826), and even before that case was decided, nothing has been better settled than that money directed to be employed in the purchase of land, and land

directed to be sold and turned into money, are considered in a court of equity as that species of property into which they are directed to be converted; and, unless the will otherwise directs, where property is thus devised, a conversion takes place as from the death of the testator, although the period prescribed for the sale is remote, and there can be no actual conversion until it arrives. 3 Pom Eq., sec. 1162. Or, as was said by the court in *Harcum's Adm'r* v. *Hudnall*, 14 Gratt. 369, "Land directed [by will] to be converted into money will pass as money, although the actual conversion by a sale may not yet have been effected; and if the will, directing the conversion, also dispose of the proceeds, the gift of the proceeds is to be considered as a gift of personal estate." It was accordingly held in that case that as to the land directed by the will to be turned into money, the interest of Mrs. Harcum, one of the legatees, was not an estate in the premises, but a mere *chose in action*, a right to have a sale of the property, and to receive her proportion of the proceeds. So, also, in *Sweetapple* v. *Bindon*, 2 Vern. 536, it was determined that a husband was entitled to money to be laid out in land as tenant by the curtesy; and authorities to the same effect are very numerous.

All this rests upon the familiar principle that equity regards that as done which is directed or agreed to be done, where nothing has intervened which ought to prevent a performance. 3 Pom. Eq. sec. 1159; *Craig* v. *Leslie*, 3 Wheat. 563; *Tazewell* v. *Smith's Adm'r*, 1 Rand. 313; *Pratt* v. *Taliaferro*, 3 Leigh, 419; *McClanachan* v. *Siter*, *Price & Co.*, 2 Gratt. 280; *Ropp* v. *Minor*, 33 Gratt. 97; *Effinger* v. *Hall*, 81 Va. 94; *Phillips* v. *Ferguson, ante*, p. 509.

This being so, the contention of the appellees that the decree of the county court of Dinwiddie county is void under which the deed of trust on "Burlington" was executed, which is the subject of this controversy, cannot be sustained. The decree was rendered in 1872 in a suit to which there were proper parties, and of which the court undoubtedly had jurisdiction. Indeed,

its jurisdiction is denied only on the ground that no court in Virginia has power to order infants' *lands* to be mortgaged or encumbered. But here, as we have seen, the interests of the *cestuis que trust* are to be considered not as realty, but as personalty, and hence the deed of trust, so far at least as they are concerned, is to be regarded as nothing more or less, in effect, than a chattel mortgage, which it was competent for the county court, when the decree was rendered, to authorize the trustee to execute.

It seems that shortly before the decree was rendered, the land had been decreed to be sold in a creditor's suit in the hustings court of Petersburg to pay debts of the testator, and that in this state of things application was made by the trustee to the county court for authority to borrow a sufficient sum of money, to. be secured on the land, to pay the debts, and thus avoid a sale, which, in the then state of the market, it was supposed would be injurious, if not disastrous, to the interests of the *cestuis que trust*. The authority was granted, and the deed of trust abovementioned was accordingly executed, whereby a loan of $2,500 from the Life Association of America, of which corporation the appellant is the statutory trustee, was secured on the Burlington farm. The money was paid over to the counsel for the creditors, and every dollar of it applied, as the record shows, to the payment of debts for which the land, as a part of the assets of the testator's estate, was liable. Nor is there any proof that the arrangement was not an advantageous one for the *cestuis que trust*. Indeed, had it not been made, it is quite probable the land would have been sacrificed at a forced sale under the decree above-mentioned. But be that as it may, the deed was executed with the sanction of a court of competent jurisdiction, obtained without collusion or fraud, and is not now to be questioned. 2 Perry, Trusts (3d ed.), sec. 476, *a*.

It appears that soon after the testator's death, the land was conveyed by the executors to William A. Bragg, who on the same day conveyed it to R. K. M. Friend and Miles B. Branch, trustee, in the proportion of 259–470 to the former and 211–470

to the latter. It is conceded, however, that there was no real sale to Bragg, although the deeds purport to be founded on valuable consideration, and that the deeds were made simply as a convenient mode of vesting the legal title to the land in the grantees in the last mentioned deed. So that the rights and interests of the *cestuis que trust* with respect to the land were not affected by those conveyances; for nothing can be plainer than that taking the deed in the name of the trustee appointed by the will for Mrs. Branch and her children, who were infants, could not operate as a reconversion, or, in other words, as an election to take the property in its unconverted form as land. An election can be made only by all the parties in interest uniting therein; but an infant is incapable of making an election, nor can his guardian or trustee elect for him, though a court of equity may; and here there has been no election by a court of equity, although in the decree authorizing the deed of trust to be executed, the land is described as such, for the property "was still land, and properly described as such, though impressed with the character of personalty." *McClanachan* v. *Siter, Price & Co., supra.* See also 2 Perry, Trusts, sec. 606; 3 Pom. Eq., sec. 1175; *Pratt* v. *Taliaferro*, 3 Leigh, 419.

It is contended, however, for the appellees that filing the bill in the present suit is an election to take the property as land by the adult complainant, Edwin B. Branch, who attained his majority in 1882, and who also sues, as next friend, for the infant *cestuis que trust*—his mother, Mrs. Branch, being dead—and that the court may elect for the infants. But to this position the answer is twofold, namely: (1) That the bill is not drawn upon that theory, and (2) that no election can be made to the prejudice of the deed of trust creditor, who also occupies the position of a *bona fide* purchaser for value (*Shurtz* v. *Johnson*, 28 Gratt. 667), protected by a decree of a court of competent jurisdiction. In other words, the deed of trust, which was valid when executed, cannot be affected by any subsequent election, but any such election must be made in subordination to the deed.

Objection is also made to the deed on the ground that the bond for $2,500, secured thereby, is signed by Branch and Friend as executors, whereas it is described in the deed as having been executed by Branch as trustee, and by Friend in his individual capacity. This objection, however, is not well taken ; nor is the objection valid that the deed is executed and acknowledged by Branch and Friend individually. The deed conveyed the legal title (1 Perry, Trusts, sec. 334), and constitutes, as we have said, a valid security for the money advanced on the faith of it. Besides, the bond bound the obligors personally, although signed by them as executors. " An agent or executor who covenants in his own name, and yet describes himself as agent or executor, is personally liable, for the obvious reason that the one has no principal to bind, and the other substitutes himself for his principal." *Duvall* v. *Craig*, 2 Wheat. 45. And the same rule applies to the contracts of guardians, trustees, and all other persons acting *en autre droit ;* the addition to the signature of the word "agent," "executor," "trustee," etc., being regarded as a mere *descriptio personae,* unless, indeed, it appear that the party so signing his name was recognized as contracting in his representative character when the contract was made, in which case he will not be personally bound. *Taylor* v. *Davis,* 110 U. S. 330; *Metcalf* v. *Williams,* 104 U. S. 93 ; *Staples* v. *Staples, ante,* p. 76 ; 1 Pars. Cont. 128.

The charge that the life association had notice of the alleged *devastavit* of the executors, and conspired with them to defraud the estate, as to which much was said in the argument at the bar, is utterly without proof to sustain it. Indeed, the vague charge of fraud in the bill seems to rest upon no other ground than the allegation that when the loan was made, the association was insolvent, and knowing and concealing its insolvency, issued a policy of insurance for $5,000 on the life of R. K. M. Friend, and that the policy of insurance and the loan constituted one transaction. But the charge is distinctly and emphatically denied in the answer of the association, and also in the

answer of the defendant, J. Wesley Friend, who was the attorney of the association when the loan was made, and cognizant of the facts connected with it; and after a careful examination of the record, we have been unable to discover any evidence to overcome the denials of the answers. It is needless to say more.

Our conclusion is, that the deed of trust is a valid incumbrance on the whole of the Burlington farm, and that the circuit court erred in holding otherwise. The decree must therefore be reversed, in so far as it is in conflict with this opinion, and in other respects affirmed.

DECREE REVERSED IN PART AND AFFIRMED IN PART.