Statement.

### .Wytheville.

### COLLINS V. DOYLE'S EXECUTOR AND OTHERS.

June 8, 1916.

Absent, Cardwell, J.

1. CORPORATIONS—*Holding Property in Excess of Charter—State alone can Object—Collateral Attack.*—The transfer of property to a corporation in excess of its charter rights is not void, but the title passes to the corporation subject only to the right of the Commonwealth to avoid it in a direct proceeding for that purpose. The objection cannot be raised collaterally by a third person. The charter is a contract between the corporation and the State, and the latter alone can complain of its violation.

2. CORPORATIONS—*Excessive Holdings—Suit to Acquire Title.*—While the courts will not aid a corporation to acquire title to property in excess of its charter rights, if property is devised to it, in excess of the amount allowed by its charter, the title vests in it immediately upon the death of the testator, without aid or interruption from the court, and can only be divested by direct proceedings at the suit of the State.

3. WILLS—*Gift of Proceeds of Sale—Election to Take Property—Land—Deed from Executor.*—Where property is directed to be sold by an executor and the whole proceeds paid to a designated legatee, he may take the property in kind instead of the proceeds of the sale. In such case no deed from the executor is necessary to vest title in the legatee, though the subject devised be real estate.

Appeal from a decree of the Circuit Court of the city of Norfolk on a bill filed by an executor asking the construction of a will and the guidance of the court.

*Affirmed.*

The opinion states the case.

*Thomas W. Shelton* and *Sidney J. Dudley*, for the appellant.

*D. Lawrence Groner, Willcox, Cooke & Willcox* and *John A. Beacher,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is a bill filed by Clarence W. Cooper, executor of Mamie Doyle, deceased, against Sarah Collins, her half sister and heir at law. and the St. Mary's Female Academy and Orphan Asylum, Incorporated (hereinafter called "the asylum"), and other beneficiaries under the will, to have certain clauses thereof construed, and for other relief.

The will was admitted to probate August 25, 1913, and the sixth and seventh clauses, which alone are involved in this litigation, are as follows:

"(6) I give and bequeath unto the Saint Mary's Female Academy and Orphan Asylum, an incorporated society of the city of Norfolk, Virginia, the proceeds of my property in the city of Norfolk, Virginia, known as Nos. 80 and 82 Avon street (old numbers), No. 154 and 156 Washington street (old numbers) and No. 146 Fenchurch street, and the furniture therein. Said property to be sold by my executor . . hereinafter named and the proceeds thereof to be paid over to the Saint Mary's Female Academy and Orphan Asylum, an incorporated society of the city of Norfolk, Virginia.

"(7) I give my executor hereinafter named full power to sell any and all of my real estate; also to collect any rents and profits therefrom until the same is sold."

With respect to these clauses the bill contains the specific prayer that the court will advise, instruct and guide the executor in the disposition of the property

"devised and bequeathed to the Saint Mary's Female Academy and Orphan Asylum."

The asylum answered the bill and insisted that the devise and bequest to it were valid. The defendant, Sarah Collins, by answer which was treated as a cross-bill, alleged that the bequest or devise to the asylum was in excess of its charter limitation as to the amount of property which it was permissible for it to own at any one time, and in violation of the law and public policy of the State, and, therefore, was not merely *voidable* but absolutely *void;* that respondent as heir at law had a vested right in the property, which on the death of Mamie Doyle, passed to her by the statute of descents and distributions. She prayed that her answer be treated as a cross-bill, and that the bequest and devise to the asylum be declared null and void and of no effect, and that the property sought to be disposed of by the sixth clause of the will be decreed to her as sole heir at law of Mamie Doyle. It was admitted that under the charter as originally granted the asylum could only hold real and personal property to the value of $30,000, and that the gift from testatrix would make its holdings more than that amount.

The case was heard on the pleadings, including the demurrer and answer of the asylum to the answer and cross-bill of Sarah Collins, and evidence, and the court, without passing upon any other question, entered the decree under review, holding that by "the sixth clause of the will of said Mamie Doyle . . immediately upon her death title to the property therein devised vested in the Saint Mary's Female Academy and Orphan Asylum, Incorporated, notwithstanding the fact that at the date of the death of the said testatrix said asylum held property of the value of $30,000, the

amount to which its holdings were limited under its charter of incorporation, and doth so decide. And the court being further of the opinion that the heirs at law of the said Mamie Doyle . . have no right to question the devise doth so decide, and doth sustain the demurrer of the Saint Mary's Female Academy. and Orphan Asylum, Incorporated, to the answer and cross-bill of Sarah Collins.

"And the Saint Mary's Female Academy and Orphan Asylum, Incorporated, through its counsel, having stated that it does not desire the property devised to it as aforesaid to be sold, and the court being of the opinion that a conveyance from said executor to said asylum is not necessary to vest the title therein, doth so decide, and doth adjudge, order and decree that the said Clarence W. Cooper, executor as aforesaid, do forthwith deliver possession of the said property to the Saint Mary's Female Academy and Orphan Asy-. lum, Incorporated."

The compensation of the executor for his services in connection with the donation to the asylum was satisfactorily arranged, and the decree left nothing open in relation to that branch of the litigation.

The general rule that the transfer of property to a corporation in excess of its charter rights is not void, but that the title passes subject only to the right of the Commonwealth to avoid it in a direct proceeding for that purpose, is the settled law in this State, and is sustained by the weight of authority elsewhere. The latest utterance from this court on the subject is found in the opinion of the court delivered by Keith, President, in *Fayette Land Co.* v. *Louisville & Nashville R. Co.*, 93 Va. 274, 24 S. E. 1016, in which many authorities are collected and reviewed. The court there holds, that, "While a limit is fixed upon the

quantity of land which a corporation may take and hold, the statute imposes no penalty for its violation, and is only directory. The only penalty is that which waits upon every violation by a corporation of its chartered rights and privileges. No one can question the right of a corporation to take and hold real estate except the State by which it was created, or that within whose limits it does business, and even these must do so by a direct proceeding for that purpose. A conveyance of real estate to a corporation in excess of the amount allowed by law conveys the title of such real estate to the corporation, and a conveyance from it is effectual to pass its title thereto to the grantee."

The above case was a suit in equity by the Louisville and Nashville Railroad Company against the Fayette Land Company, which had purchased from it certain land, to enforce the collection of the purchase money secured by a lien retained in the deed of conveyance. The defendant denied liability on the ground that complainant could neither take, hold nor convey the land in controversy, and consequently could not enforce the lien for the purchase money. But the circuit court granted the relief prayed for, and its decree on appeal was affirmed.

The case of *Jones* v. *Habersham*, 3 Woods' Rep. (U. S. Cir. Ct., 5th Cir.) 443, Fed. Cas No. 7, 465, was a bill filed in the Circuit Court of the United States for the Southern District of Georgia by the heirs at law of a testatrix, seeking to have certain devises and bequests to the Georgia Historical Society declared inoperative and void. Mr. Justice Bradley, circuit justice, delivered the opinion of the court. In the course of his opinion (at pp. 475-6) he observes: "It seems to us, however, that the gift to the Georgia Historical Society is not void. One ground of objec-

tion is that whilst a general power is given to the society to take and hold goods and lands, it is coupled with a proviso that the clear annual income of such real and personal estate shall not exceed the sum of five thousand dollars; whereas, the bill states that the income of the society was already between three and four thousand dollars at the time of the gift, which will increase it seven thousand dollars more. This, if the society accepted the trust, may have been cause of forfeiting its charter; but the gift would nevertheless be vested in it. To hold otherwise would be to render the society exempt from any inquiry on the subject at the suit of the State, for the answer would be: "We cannot hold more property than our charter allows, and, therefore, we do not. Certain things are *ultra vires* of a corporation; but when it has power to hold property, and it is forbidden to hold beyond a certain amount, the matter being one of degree merely, or of more and less, this is not a question of *ultra vires*, but of violation of its charter. A contrary rule would involve many absurdities. Suppose a corporation has no more property than its charter allows, but by an enhancement of values it grows into an excess of that allowance, to what particular portion of its property does its title become void? Is the whole affected by the vice? The answer plainly is, the title to none of it becomes void; but the corporation may be amenable to the penalty of violating its charter. Individuals cannot call it in question; its tenants must continue to pay its rents, and its debtors their debts; the State alone has the right to proceed against it. The State may or may not see fit to do so. It would depend on the circumstances of the case, the greatness of the excess, the causes which led to it, etc. The State may condone the offense. The legislature may relieve by

enlarging its power." On appeal, the decree in that case was affirmed by the Supreme Court of the United States. *Jones* v. *Habersham*, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401.

In regard to the contention of the heirs at law and next of kin that the provisions of the will were void and that a resulting trust in the property should be declared in their favor, Mr. Justice Gray, speaking for the court, said: "But there are two conclusive answers to this argument: (1) Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only by a direct proceeding by the State which created it." Citing *Runyan* v. *Coster*, 14 Pet. 122, 131, 10 L. Ed. 382; *Smith* v. *Sheely*, 12 Wall. 358, 361, 20 L. Ed. 430; *Bogardus* v. *Trinity Church*, 4 Sandf. (N. Y.) Ch. 633, 758; *De Camp* v. *Dobbins*, 29 N. J. Eq. 36; *Davis* v. *Old Colony R. Co.*, 131 Mass. 258, 273, 41 Am. Rep. 221. The second answer maintains the constitutionality of an act of the General Assembly of Georgia repealing the provisos in the original charter with respect to the annual income of the society.

In *Farrington* v. *Putnam*, 90 Me. 405, 37 Atl. 652, (38 L. R. A.), Peters, C. J., in a convincing opinion reviews many of the cases bearing on the questions here involved, and at p. 446 says: "The charter is a contract between the corporation and the State in which no person is legally interested but the parties thereto, the same general rules of interpretation apply as in other contracts, that if the corporation fails to keep its side of the contract the State can take advantage of the default or not as it pleases; that the transgression may be so slight in its consequences that the State will forgive the offense, or forgive it because

occasioned by some accident, or resulting while the corporation is acting in good faith, or the State may, acting through its prosecuting officers, punish the offense for the public good; that the State may by its legislature authorize the corporation to increase its capital before the act is done, or, if the increase be made without authority, may ratify the act afterwards either by some legislative provision, or, as may be done between any other contracting parties, by its silence and any other acts indicating consent; that from the foregoing propositions it is clearly deducible that bequests like the present are voidable only, and may be avoided by the State alone, and are in no sense to be regarded as void; that a policy arose as to what better be done in the circumstances of each particular case, and that the policy belongs to the State and not to the court and is an executive and not a judicial right, for the court would decide the question in the case for all cases and all time, while the State may decide the question differently at different times according to its discretion and the public good. This right the State has never surrendered and the court cannot take it from the State. But it would surely deprive the State of its privilege if the court fails to act upon these bequests as valid bequests until in proper and independent proceedings, such bequests are declared to be void."

It thus appears that the fallacy in appellant's position lies in the assumption that clause six of testatrix's will is *void*, and that, therefore, she, as heir at law, can maintain a suit to establish a resulting trust for her own benefit in the property bequeathed to the asylum.

Counsel also attempts to invoke the principle enunciated in the class of cases of which *Case* v. *Kelly*, 133 U. S. 21, 10 Sup. Ct. 216, 33 L. Ed. 513, is a type, namely, that, "The rule that the limitation of the

power of a corporation in a State to receive and hold
real estate concerns the State alone does not apply
where the corporation, as plaintiff, seeks to acquire
real estate which it is not authorized by law to ac-
quire." Mr. Justice Miller, in delivering the opinion
of the court in that case said: "We need not stop
here to inquire whether this company can hold title to
lands, which it is impliedly forbidden to do by its
charter, because the case before us is not one in which
the title to the lands in question has ever been vested
in the railroad company, or attempted to be so vested.
The railroad company is plaintiff in this action, and is
seeking to obtain the title to such lands. It has no
authority by the statute to receive such title and to
own such lands, and the question here is, not whether the
courts would deprive it of such lands if they had been
conveyed to it, but whether they will aid it to violate
the law and obtain a title which it has no power to hold."

The fundamental distinction between that case and
the case in judgment is obvious. The asylum's title to
the property in question has already vested, and it is
not invoking affirmative relief at the hands of the
court with respect to it. While the heir at law, as
plaintiff in the cross-bill, is seeking to wrest from the
asylum property, the right to which has vested, and
the latter appears only in the role of defendant.

Upon the authorities cited (and they might be in-
definitely multiplied) the right of the asylum to the
estate disposed of by the sixth clause of the will vested
immediately upon testatrix's death, without aid or
interruption from the court, and could only be de-
vested by direct proceedings at the suit of the State.
The original bill was not filed by the asylum asking to
recover its own, but by the executor to construe the
will and have the instruction and guidance of the

court in the disposition of the property devised and bequeathed to the asylum.

Clause six directs the executor to sell the property and pay over the proceeds to the asylum, which *ex proprio vigore*, under the doctrine of equitable conversion, at once converted the real estate into personalty; and the asylum has the right to take the property in kind instead of the proceeds of sale, and informed the executor of its election so to receive it. In these circumstances, the circuit court correctly held that a sale of the property was not necessary, and decreed that it be delivered by the executor to the rightful owner, the asylum. The ruling is in harmony with the decisions of this court. *Tazewell* v. *Smith's Admr.*, 1 Rand. (22 Va.) 313, 10 Am. Dec. 533; *Harcum's Admr.* v. *Hudnall*, 14 Gratt. (55 Va.) 369; *Corbin* v. *Mills*, 19 Gratt. (60 Va.) 438; *Repp* v. *Minor*, 33 Gratt. (74 Va.) 97; *Effinger* v. *Hall*, 81 Va. 107; *Carr* v. *Branch*, 85 Va. 602, 8 S. E. 476.

It thus plainly appears that the present case falls within the general rule, and does not come either within the letter or the spirit of the exception to which our attention has been drawn.

It may also be noted that since the death of Mamie Doyle, the testatrix, the General Assembly has seen proper to amend the charter of the asylum so as to authorize an increase in the amount of property which it may lawfully hold that more than covers the added value of the estate in controversy. This legislation, according to the authorities, condones the original offense, if, indeed, offense there was, and validates a previously voidable transaction.

We find no error in the decree appealed from, and it is affirmed.

*Affirmed.*