# Wytheville.

## MOORE v. KERNACHAN.

### June 15, 1922.

1. DEPOSITIONS—*Exceptions to Testimony—Competency of Witness—Objections Must be Brought to the Attention of the Court at the Hearing.*—Exceptions to questions propounded to a witness when his deposition is taken must be brought to the attention of the court at the hearing, or the exceptions will be deemed to have been waived. This rule applies as well to exceptions to the competency of a witness as to other exceptions.

2. CONVERSION AND RECONVERSION—*Nature of Doctrine of Conversion.*—The doctrine of equitable conversion is a pure creature of equity, unknown to the law, and is a mere incident or application of the maxim that equity treats that as done which ought to be done.

3. CONVERSION AND RECONVERSION—*Doctrine in General.*—Under the doctrine of equitable conversion, land which is directed to be converted into money is treated as money, and money which is directed to be invested in land is treated as land.

4. CONVERSION AND RECONVERSION—*Wills—Intention of Testator.*—As applied to wills, the object is to ascertain the intention of the testator, and whether that intention was a conversion out and out for all purposes, or merely for a particular purpose, is to be gathered from a consideration of the will as a whole.

5. CONVERSION AND RECONVERSION—*Wills—Intention of Testator.*—The sole purpose of the doctrine of equitable conversion in the case of a will being to effectuate the intention of a testator, it cannot be invoked when his intention fails or is incapable of accomplishment. When the purpose of the testator as disclosed by his will so fails or is incapable of accomplishment, the operation of the rule of equitable conversion ceases, and the property retains its original character, and goes to the heir or next of kin, as the case may be.

6. CONVERSION AND RECONVERSION—*Conversion of Land into Money—Failure of Purpose of Conversion.*—With respect to the conversion of land into money, the rule, independent of any statute on the subject, is that where the purpose of the conversion wholly fails the land results to the heir. Where the purpose only partially fails the conversion must still be made by selling the land in order to satisfy the purposes which remain effective, and after satisfying those purposes, the surplus, unless the will otherwise directs, results to the heir

of the testator as money, and in case of his death will go to his personal representative, even though the sale did not take place until his death.

7. CONVERSION AND RECONVERSION—*Wills*—*Failure of Purpose of Conversion.*—Undoubtedly a testator may direct that his land shall be converted into money, out and out, for all purposes, and a court of equity will respect the direction as the testator's will is supreme in the premises, but there is no presumption of such an intent, and its existence must be gathered from the will when read as a whole. The general rule is that where there has been a total or partial failure of the specific bequest for which the conversion was directed, the conversion will cease altogether, or *pro tanto*, as the case may be.

8. CONVERSION AND RECONVERSION—*Wills*—*Failure of Purpose of Conversion*—*Devise for the Payment of Debts.*—Where there is a devise of land to be sold for the payment of testator's debts, the conversion is not extended to land not needed for the payment of the debts, or to a surplus remaining from the sale after the payment of the debts.

9. EXECUTORS AND ADMINISTRATORS—*Payment of Debts*—*Real Estate Directed to be Sold*—*Liability of Personal Estate.*—While it may be true that the personal estate of a testator will not be discharged from the payment of his debts merely because real estate is directed to be sold for that purpose, yet, where it appears that there was specific intention that the real estate should be first applied and there is a gift over of the personal property to another legatee, the intention of the testator will be respected and the real estate held to be the primary fund for the payment of debts.

10. WILLS—*Conversion and Reconversion*—*Devise of Land to be Sold for Payment of Debts*—*Bequest of Balance of Money, Notes and Bonds*—*Case at Bar.*—A testatrix, by the first clause of her will, directed the sale of fifty acres of land for the purpose of paying her debts. By the seventh clause of her will she bequeathed the "balance of money and notes and bonds" to a daughter; and by the ninth clause she left to a son "the balance of my estate."

*Held:* That clause 1 of the will constituted the fifty acres of land therein mentioned a primary fund for the payment of the debts of the testatrix; that so far as necessary for the payment of such debts the said fifty acres was converted into money, but no further; and that the surplus, if any, after the payment of such debts, passed as land under clause 9 of the will.

11. DEBTS—*Costs of Administration Not Debts.*—Costs of administration are not debts within the meaning of a provision in a will directing the sale of real estate for the payment of testatrix's debts.

12. CONVERSION AND RECONVERSION.—*Direction to Sell Land for Payment of Debts*—*Election of Residuary Legatee to Pay Debts and Retain the Land.*—Testatrix, after providing for the sale of fifty acres of land for the purpose of paying her debts, devised the balance of her estate to a son.

*Held:* That, if the son should elect to pay the debts of the testatrix

and take the fifty acres of land set apart for that purpose, he should be permitted to do so, without a sale of the land, as this is simply a reconversion which he had a right to make.

Appeal from a decree of the Circuit Court of Mecklenburg county, construing a will.

*Reversed.*

The opinion states the case.

*Chas. T. Reeks, L. Berkley Cox* and *S. S. P. Patteson,* for the plaintiff in error.

*Hiram P. Wall* and *Irby Turnbull,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Mrs. E. A. Moore died in 1915, leaving an estate consisting of household and kitchen furniture, a debt of $600.00 due her by her son, S. T. Moore, and a tract of land containing upwards of 550 acres. She left surviving six daughters and one son. By her will, dated in 1912, she devised to one of her daughters thirty acres of land, to each of the other daughters fifty acres, and to her son "the house in which I now live and ten acres of land." To two of her daughters she also gave one hundred dollars, each, and to another daughter "balance of money, and notes and bonds." When her will was executed she had neither money, notes nor bonds, but the expectation of estate of that character arising from the sale of land to her son; and at the time of her death she owed no debts except a doctor's bill and a bond of about $1,000.00, principal and interest, secured by a deed of trust on her land,

but both the bond and the deed of trust securing it were barred by the act of limitations. This bond was held and owned by one of her daughters who had purchased it in 1898, and no interest had been paid on it after its purchase. This suit was brought by the son suing in his own right and as executor of his mother's will, asking to have the will construed, the land devised to the several devisees set apart to them under the order of the court, his accounts as executor settled and, if need be, a sale of the land set apart for the payment of debts, or that he be allowed to pay said debts and take the land so set apart as residuary devisee under his mother's will, and for general relief. The whole controversy is over the proper construction of clauses one, seven and nine of the will. These clauses are as follows:

"1. It is my wish that all my debts be first paid, for which I leave fifty acres of the best timber land east of the house."

"7. To my daughter Willie, I leave fifty acres adjoining J. W. Davies' land to be cut off by a line running parallel to that of said Davies, also balance of money and notes and bonds."

"9. To my son Samuel I leave the balance of my estate."

The value of the fifty acres set apart for the payment of debts does not appear from the record, but it was stated from the bar, on the oral argument, that the value was probably four or five thousand dollars. It is contended by the daughter, Willie, that, under clause 1, of the will, the fifty acres of land set apart for the payment of debts was converted out and out into money, and that the surplus, after the payment of debts, passes to her under clause 7, and the trial court so held, whereas, the son contends that there

was a conversion only so far as necessary to pay the debts, and that the surplus passes to him as land under clause 9. Both parties state that they wish the debt due their sister paid, although it is barred by statute of limitations, and that whichever one of them gets the land will pay it. Each one asks to be allowed to pay off the debts and take the fifty acres.

[1] No testimony was given in the case except the deposition of the son, S. T. Moore, which was given April 15, 1920, after the Code of 1919 went into effect. His evidence, if admissible, is sufficient to establish the fact that he was to get the land upon the payment of his mother's debts. There were sundry exceptions taken to questions propounded to the witness during his examination, among them to his competency, because there was no ambiguity in the clause of the will about which he was testifying, because his testimony violated the parol evidence rule, and because some of the questions were leading. But none of these exceptions were brought to the attention of the court at the hearing, and the decrees in the cause make no mention of or reference to them. The exceptions must, therefore, be deemed to have been waived. This rule applies as well to exceptions to the competency of a witness as to other exceptions.

In *Stewart* v. *Conrad's Adm'r*, 100 Va. 128, 136, 40 S. E. 624, 627, it is said: "Objections were made to the competency of certain witnesses when their depositions were taken, but those objections were not brought to the attention of the circuit court, nor passed upon by it. The objections cannot be considered by this court. A party who objects to the deposition of a witness, if he wishes to rely upon the exception, must bring it to the attention of the court below so it may be passed upon by that court, and,

unless the record shows that this has been done, the exception will be treated in the appellate court as waived. *Fant* v. *Miller & Mayhew*, 17 Gratt. (58 Va.) 187; *Simmons* v. *Simmons*, 33 Gratt. (74 Va.) 461; *Martin* v. *South Salem Co.*, 94 Va. 28, 42, 26 S. E. 591." See, also, *Armstrong* v. *Maryland Coal Co.*, 67 W. Va. 589, 69 S. E. 195.

But, even if the testimony of the son be excluded, the same result would follow. Clause 1 of the will sets aside the fifty acres of land therein mentioned as the primary fund for the payment of debts, and this the testatrix had the right to do; but this could only be accomplished by a sale of the land, or at least some portion thereof. So that there was an equitable conversion of the land, at least, to the extent necessary to pay the debts.

[2–4] The doctrine of equitable conversion is a pure creature of equity, unknown to the law, and is a mere incident or application of the maxim that equity treats that as done which ought to be done. Under it, land which is directed to be converted into money is treated as money, and money which is directed to be invested in land is treated as land. As applied to wills, the object is to ascertain the intention of the testator, and whether that intention was a conversion out and out for all purposes, or merely for a particular purpose, is to be gathered from a consideration of the will as a whole. The general doctrine that a direction to convert will be treated as a conversion, is such a well recognized rule of equity jurisprudence everywhere, that it would be a waste of time and space to discuss it or cite the authorities generally in support of it. In this jurisdiction, see *Harcum's Adm'r* v. *Hudnall*, 14 Gratt. (55 Va.) 369; *Ropp* v. *Minor*, 33 Gratt. (74 Va.) 97; *Carr* v. *Branch*, 85 Va. 601, 8 S. E. 476;

*Collins* v. *Doyle's Ex'r*, 119 Va. 63, 89 S. E. 88. But, while the doctrine itself is well settled, the limitation of its application seems to be equally well settled.

[5] In *Painter* v. *Painter*, 220 Pa. 82, 69 Atl. 323, 20 L. R. A. (N. S.) 117, it is said: "While the doctrine of equitable conversion is well settled on principle and reason and is recognized in numerous cases determined by this court, the sphere or limitation of its application is equally well established and should be observed. The sole purpose of the doctrine in the case of a will being to effectuate the intention of a . testator it cannot be invoked when his intention fails or is incapable. of accomplishment. The reason of the rule then ceases and the rule itself no longer obtains. This principle is as well settled on reason and authority as the doctrine of equitable conversion itself. It is the logical consequence of the doctrine which cannot be applied unless there is an existing purpose of the testator to be carried into effect. The testator's intention in regard to the disposition of his property as declared in his will, having failed, an alternative undisclosed intention cannot take its place, and the doctrine of equitable conversion be invoked to carry it into effect. The court is not at liberty to surmise what the intention of the testator would have been, and what disposition he would have made of his property if he had anticipated the failure of the disposition which he makes in his will. He is dead and no one can speak for him and declare an alternative intent in the disposition of his property. Any other purpose than that named in the will is necessarily unknown and the doctrine of equitable conversion cannot be applied to carry out his unknown intention. Hence, the necessity for enforcing the rule cited by Mr. Scott, afterwards Lord Eldon, in his argument

in the leading English case of *Ackroyd* v. *Smithson,*
1 Bro. C. C. 503, that, the reason of the intention
ceasing, the intention should be taken to have ceased.'*

After a full discussion of the authorities, the con-
clusion reached is that "It is clear, therefore, that,
under all the authorities, when the purpose of the
testator as disclosed by his will has failed or is incapable
of accomplishment, the operation of the rule of
equitable conversion ceases, the property retains its
original character, and goes to the heir or next of kin,
as the case may be."

In 1 Jarman on Wills (6th ed.) 589, it is said: "Every
conversion, however absolute in its terms, will be
deemed to be a conversion for the purpose of the will
only, unless the testator distinctly indicates an inten-
tion that it is, on the failure of those purposes, to
prevail as between those persons on whom the law
casts the real and personal property of an intestate,
namely, the heir and next of kin.

In *Pratt* v. *Taliaferro,* 3 Leigh (30 Va.) 419, 423,
Judge Carr, in distinguishing certain cases relied on
in the argument, uses this illustration: "Thus, where
it is uncertain in what manner the owner intended
the property to descend, or where a conversion was
directed for a special purpose; or out and out, but the
produce to be applied to a particular purpose; when
the purpose fails, the intention fails, and equity
regards the owner as not having directed a conversion.
Thus, in case of lands directed to be sold to *pay the
debts of the testator*, if the debts are paid without a
sale, it remains land; or if sold, as nothing but the
payment of debts was intended, all beyond will remain
real estate."

In *Phillips* v. *Ferguson,* 85 Va. 509, 8 S. E. 241,
17 Am. St. Rep. 78, 1 L. R. A. 837, a testator directed

a sum of money to be invested in land to be divided between six of his children, and, provided, further, that if any one of his children should marry into a certain family that provision should be revoked. One of the children did marry into the prohibited family. It was held that the undisposed of portion of the fund directed to be invested resulted in its unconverted form, as personalty to the executors for the residuary legatees, other than the daughter whose share was thus revoked.

In *Gallagher* v. *Rowan's Adm'r*, 86 Va. 823, 824, 825, 11 S. E. 121, 122, it is said: "The law is that where money is directed by will to be laid out in land, and the purpose of the conversion wholly fails, the fund results in its original form to the personal representative for the next of kin, or the residuary legatee, as the case may be; and the same rule applies where the failure of purpose is only partial. *Phillips* v. *Ferguson, supra,* and 3 Pomeroy's Eq. sec. 1172."

[6] It is further said "with respect, however, to the conversion of land into money, the rule, independent of any statute on the subject, is that where the purpose of the conversion wholly fails the land results to the heir. Where the purpose only partially fails the conversion must still be made by selling the land in order to satisfy the purposes which remain effective, and after satisfying those purposes, the surplus, unless the will otherwise directs, results to the heir of the testator as money, and in case of his death will go to his personal representative, even though the sale did not take place until his death."

This is taken largely from 3 Pomeroy's Eq. sec. 1171, where a large number of authorities are cited for the proposition. In the note to that section, it is said amongst other things "The main branch of this rule

that the surplus results to the heir, was settled by the great case of *Ackroyd* v. *Smithson*, 1 Brown C. C. 503, 1 Lead. Cas. Eq. (4th Am. Ed.) 1171, 1181, 1197. The other branch as to the form in which it results was first decided by *Smith* v. *Claxton*, 4th Madd. 484," and then follows the list of cases supporting that doctrine.

In *Fifield* v. *Van Wyck's Ex'rs*, 94 Va. 557, 27 S. E. 446, 64 Am. St. Rep. 745, it is said: "It seems to be established by the weight of authority that where a testator directs his real estate to be sold and the mixed fund arising from the proceeds of the realty and personalty to be applied to certain specified purposes, if any part of the disposition fails either. because void *ab initio* or by lapse, then, in proportion to the extent or amount which the real estate would have contributed to that disposition the proceeds thereof retain the quality of real estate for the benefit of the heir, although the real estate has in fact been sold."

In *Sweeney* v. *Warren*, 127 N. Y. 426, 28 N. E. 413, 24 Am. St. Rep. 468, the executor of a will was directed to sell and convey designated lots of real estate "for the purpose of discharging all my debts." The court said: "By this provision the lots mentioned are not converted into money out and out, but the executors are empowered to convert them for a specific purpose, to-wit: the payment of the testator's debts. When a testator authorizes his executors to sell and convert into money all or a part of his realty for a specific purpose, which fails, or is accomplished without a conversion, the power is extinguished and the land cannot be sold by virtue of it or treated as money, but descends to the heir, unless it is devised."

In *Cook's Ex'r* v. *Cook's Adm'r*, 20 N. J. Eq. 375, 377, it was said: "When land for certain purposes is required to be converted into money and in the sale more is

sold than is required for that purpose, the excess of
the proceeds ·will be considered as land. *Oberly* v.
*Lerch*, 3 C. E. Green, 346, 575.

"In this case the executor was not directed or
required to sell except so far as a sale was necessary for
the purpose of paying debts, and the legacies directed
to be paid.    As to the rest, it was a mere power which
he could exercise or not at his discretion, and therefore
the land must be considered to have retained its
character until the actual sale."

In *Foster's Appeal*, 74 Pa. St. 391, 398, 15 Am.
Rep. 553, it was said by Sharswood, J., "When the
purpose of conversion is attained, conversion ends,
or more accurately, reconversion takes place."

In *James* v. *Hanks*, 202 Ill. 114, 120, 66 N. E. 1034,
1036, it is said, amongst other things: "The testatrix,
May Ann James, directed her lands to be sold by her
executors for the purpose of paying certain gifts to
legatees, and not for the purpose of giving the proceeds
of the sale of the lands the quality of personalty to
all intents.    The conversion was, therefore, for the
particular purposes of the will and the benefit of the
legatees, and the fund produced by the sale cannot
be regarded as personalty for the benefit of the husband
as the heir at law of the testator.    2 Jarman on Wills,
pages 215, 216."

In *In re Sanford's Estate* (1919), 188 Iowa, 833,
175 N. W. 506, the doctrine of equitable conversion
is discussed and many cases cited.    In that case the
personal property amounted to $35,054.00, of which
about two-thirds was needed for the payment of debts
and costs of administration.    There were legacies
amounting to $147,800.00.    The will contained no
positive direction to sell any of the real estate,    but
there was an imperative necessity to sell it to pay

the legacies, and it was held that the intention of the testator to work an equitable conversion of the real estate would be implied, but it was said "There was an equitable conversion, however, only to the extent that the sale of real estate was imperatively necessary to pay the pecuniary legacies and otherwise carry out the intention of the testator. *Duffield* v. *Pike*, 71 Conn. 521, 42 Atl. 641; *McHugh* v. *McCole*, 97 Wis. 166, 72 N. W. 631, 40 L. R. A. 724, 65 Am. St. Rep. 106; *Painter* v. *Painter*, 220 Pa. 82, 69 Atl. 323, 20 L. R. A. (N. S.) 117; *Boyce* v. *Kelso*, 107 Mo. 190, 68 S. W. 550; *Kolars* v. *Brown*, 108 Minn. 60, 121 N. W. 229, 63 Am. St. Rep. 410; *James* v. *Hanks*, 202 Ill. 114, 66 N. E. 1034."

In 6 R. C. L. 1073, it is said: "Where an executor sells real estate of his testator to pay his debts, under a power contained in the will, the conversion of the realty into personalty is completed to all intents and purposes only to the extent to which the purchase money is required for the particular objects for which the sale takes place; and the excess, though in the form of money, remains impressed with the character of real estate for the purpose of determining who is entitled to receive it." Among the cases cited in support of the text are *Taylor* v. *Crook*, 136 Ala. 354, 34 So. 905, 96 Am. St. Rep. 26; *Kolars* v. *Brown*, 108 Minn. 60, 121 N. W. 229, 133 Am. St. Rep. 410. They have been examined and found to fully support the text. The last mentioned contains quite a full citation of authority from nine different States.

[7] Undoubtedly a testator may direct that his land shall be converted into money, out and out, for all purposes, and a court of equity will respect the direction as the testator's will is supreme in the premises, but there is no presumption of such an intent, and

its existence must be gathered from the will when read as a whole. *Read* v. *Williams*, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748. There are cases where the courts have held the conversion complete for all purposes, notwithstanding the failure of a particular purpose, but it will be found that such an intention was gathered from the will itself when read as a whole. *Evans' Appeal*, 63 Pa. 183; *Hutchings* v. *Davis*, 68 Ohio St. 160, 67 N. E. 251; *Harrington* v. *Pier*, 105 Wis. 485, 82 N. W. 345, 76 Am. St. Rep. 924, 50 L. R. A. 307; *Lash* v. *Lash*, 209 Ill. 595, 70 N. E. 1049; cases cited in notes 20 L. R. A. (N. S.) 119. The general rule is that where there has been a total or partial failure of the specific bequest for which the conversion was directed, the conversion will cease altogether or *pro tanto*, as the case may be. The question has often arisen upon failure of a religious or charitable bequest. In addition to the cases hereinbefore cited, see cases cited in note 5 Am. St. Rep. 146.

In *Hawley* v. *James*, 5 Paige Ch. (N. Y.) 318, 444, it is said: "Where the object of the conversion fails, either wholly or in part, whether such failure be occasioned by the incapacity of the devisee or legatee to take or because of the illegality of the disposition attempted to be made of the converted property, or of any particular estate or interest in such property, or from any other cause, there will be a resulting use or trust or estate in the property, or in so much thereof as is not legally or effectually disposed of in favor of those who would have been entitled to such property if the conversion thereof had not been directed by the will."

In *Read* v. *Williams*, 125 N. Y. 560, 571, 26 N. E. 730, 732, 21 Am. St. Rep. 748, 752, it was said by Andrews, chief justice, speaking for the court: "A

power of sale in a will, however peremptory in form, if it can be seen that it was inserted in aid of a particular purpose of the testator, or to accomplish his general scheme of distribution, does not operate as a conversion where the scheme or purpose fails by reason of illegality, lapse or other cause. In that case the property retains its original character and it goes to the heir or next of kin as real estate or personalty, as the case may be. Nothing short of a clear intention to be collected from the will that the land shall be sold and converted into money before division, whether the particular purpose fail or not, will be sufficient in equity to change the character of the property. In England even this is not sufficient to exclude the heir in the absence of an express gift of the proceeds away from him."

In *Painter* v. *Painter, supra,* there is an able discussion of the subject. In that case three of the judges dissented, but the dissent was on the application of the rule to the facts of the particular case. The general rule and its qualification was fully recognized by the dissenting judges in the following language: "The doctrine of equitable conversion is undoubtedly subject to the qualification here expressed, and whether the present case falls within the qualification is the determining question. A conversion directed by a testator is conversion only for the purpose of the will. When the purpose is limited and special the conversion takes place only so far as it may be consistent with and is related to the purpose indicated. It is universally allowed that when the purpose or object of the conversion fails, the estate remains unconverted to the extent of such failure."

[8] In our research we have found no case of a devise simply for the payment of debts where the conversion was extended to land not needed for the payment of

the debts or to a surplus remaining after the payment of the debts.

[9] While it may be true that the personal estate of a testator will not be discharged from the payment of his debts merely because real estate is directed to be sold for that purpose, yet where, as here, it appears that there was specific intention that the real estate should be first applied and there is a gift over of the personal property to another legatee, the intention of the testator will be respected and the real estate held to be the primary fund for the payment of debts. *Sweeney* v. *Warren, supra.*

[10–12] We are of opinion that clause 1 of the will constituted the fifty acres of land therein mentioned a primary fund for the payment of the debts of the testator; that so far as necessary for the payment of such debts the said fifty acres was converted into money, but no further; and that the surplus, if any, after the payment of such debts, passed as land under clause 9 of the will to the appellant, S. T. Moore. We are further of opinion that the costs of administration are not debts, the payment of which are provided for by clause 1 of the will. If the appellant, S. T. Moore, shall elect to pay the debts of the testatrix and take the fifty acres of land set apart by clause 1 of the will he should be permitted to do so, without a sale of land. This is simply a reconversion which he has the right to make. Lile's Notes on Equity Jurisprudence, 29.

The question of the ownership of the rents of land accruing since the death of the testatrix has not yet been passed on by the trial court, and, hence, is not discussed.

The debt due by the testatrix to her daughter, Mrs. Kernachan, which is confessedly barred by the statute of limitations as against the estate of the testatrix, is

not in litigation in this suit. The appellant testified in this suit, to which both he and Mrs. Kernachan are parties, that it was his "intention to pay it with interest up to the time the suit began," whether barred by the statute of limitations or not. Whether or not he could be held liable personally for the debt, under the circumstances, is not before us, and we express no opinion on the subject. Compare *Dinguid* v. *Schoolfield*, 32 Gratt. (73 Va.) 803.

The decree of the circuit court at its June term, 1920, and December term, 1920, so far as inconsistent with this opinion, will be reversed, and the cause remanded to the said circuit court with directions to conform its decree to this opinion and otherwise proceed in the cause according to law.

*Reversed.*