40

# CIRCUIT COURT OF FAIRFAX COUNTY

Lifta Enterprises, Inc.

v.

Gang Huh et al.

### January 14, 2004

### Case No. (Chancery) 184517

BY JUDGE JONATHAN C. THACHER

This matter was tried on November 26, 2003, and taken under advisement by the court. The complainant's cause of action seeks specific performance of a contract for the sale of real property and improvements which consist of a lot and gas station building in Falls Church, Virginia. The complainant entered into the contract for sale on March 7, 2002, with the defendant, Gang Huh, the individual who signed the sales contract, and from D & G Ventures, Inc., the successor corporation to Falls Church Amoco, Inc., and the record owner of the realty.

### *Corporate History and Background*

Evidence presented at trial established that Falls Church Amoco, Inc., was granted a certificate of incorporation by the State Corporation Commission on August 29, 1995. The Articles of Incorporation, attached to Certificate of Incorporation, lists two initial directors, Sung Ho Suh, the registered agent, and the defendant Gang Huh. (Def. Ex. 10A.) The Waiver of Notice of First Meeting of Board of Directors and a form titled Corporate Data dated September 1 and September 5, 1995, respectively, each list a single director, Mr. Huh. The Bylaws of the Corporation, also dated September 5, 1995, also list Mr. Huh as the single director. Falls Church Amoco, Inc., was terminated as a Virginia Corporation by the State Corporation Commission on September 16, 1996, and was later reinstated in July of 1997. It was again terminated on December 31, 1998, and reinstated on November 21, 2002.

On the same day, November 21, 2002, the corporate name was also changed to D & G Ventures, Inc. There are, and have been throughout, only two equal shareholders, Mr. Huh and his wife, Dang Huh.

The evidence presented at trial was undisputed that this corporation has had only one formal corporate meeting in its entire existence. No records of any other corporate formality, meeting, resolutions, minutes, or other indicia of corporate existence exists. The evidence further established that Mr. Huh was the sole individual who engaged in any activity on behalf of the corporation. Mr. Huh made all business decisions, conducted all business on behalf of the corporation, etc. Mr. Suh, the registered agent and an initial director prior to the first corporate meeting, testified that he occasionally gave Mr. Huh advice, but otherwise undertook no actions in any corporate capacity. Indeed all mail he received dealing with or concerning the corporation was simply turned over to Mr. Huh, unopened.

## Procedural History

The Complainant filed this Bill of Complainant seeking specific performance of the sale of the property located in Falls Church, Virginia. The complainant's cause of action sets forth two arguments in support of the claim for specific performance of the realty sale contract. The first argument is that Mr. Huh, as the sole director of the corporation which had been in a period of termination on the date of the sales contract, March 7, 2002, was by operation of law winding down the now terminated corporate affairs pursuant to Va. Code § 13.1-752(A) and that the contract executed by Mr. Huh individually, as the sole director, binds the corporation.

The complainants second argument is that, by virtue of the course of conduct of Mr. Huh, the total lack of any corporate formality throughout this period of time, his routine conduct of doing business without any recognition of the corporate form, and the lack of any notice from the single other shareholder in the corporation, that the corporation should be bound to the contract of sale.

## Findings of Fact

The court makes the following findings of fact. The complainant and defendant, Mr. Huh, entered into a contract for the purchase of the subject improved real property on March 7, 2002. At the time, the defendant was represented by his listing realtor, Tony Tarish, while the buyer was represented by its realtor, Davoud El-Khatib. Testimony established that following price negotiations, the parties agreed to the sale of the property

and improvements for the price of $1,100,000.00. Mr. Tarish prepared a contract of sale on behalf of his client, Mr. Huh. Mr. Tarish testified he inquired of Mr. Huh of the name of the entity to be listed as the seller and if there were any co-owners. To this inquiry, Mr. Huh replied, "he owned the property individually, there was no corporation involved." Mr. Tarish testified this was a concern because the Realtor's Multiple Listing cited the property as belonging to Falls Church Amoco, Inc. Mr. Tarish was aware that Mr. Huh had recently acquired the land from his Amoco supplier and was concerned that the listing service had not been updated with the new owner, Mr. Huh individually. However, Mr. Tarish further testified that the listing service was routinely approximately six months behind completed transactions.

Mr. Huh testified that he told his agent to "put his name on the contract as the seller." Mr. Huh's counsel conceded that Mr. Huh had unquestionably misrepresented his ownership of the property to his real estate agent and to the purchaser of the property. However, Mr. Huh's counsel argues that, without approval of the alleged second director or the second shareholder, Mr. Huh did not possess the legal authority to enter into the sales agreement.

Mr. Huh testified that he did intend to sell the property at the time he entered into the contract, but his wife, the other shareholder, did not approve of the sale, and he therefore did not go to settlement. This testimony was directly contradicted by Mr. Huh's wife, Dang Huh, who testified she did not learn of the contract of sale until March of 2003 during depositions in this litigation. Further, Mr. Huh's realtor-agent, Mr. Tarish, testified that Mr. Huh told him the reasons for refusing to sell were due to: (a) a deal in Tennessee which fell through; (b) that he needed to keep the business in order to help some people through immigration; (c) that he had a deal for a Texaco station in Springfield, Virginia, that fell through; and (d) that somebody else had offered him $1,300,000 for the property. Mr. Huh denied reason (d).

Dang Huh, the wife and second shareholder, testified that she became a director of the corporation in November 2002 and owns 50% of the stock of the corporation. She testified she had no involvement with any corporate meetings, and, although she is now the secretary, she has never prepared minutes or notes of any corporate meeting. She further testified that she first learned of the Contract of Sale in March 2003 during a deposition in this litigation and never discussed the sale of the business prior to that time.

Factually, a critical element of the defendants' case on behalf of the corporation is the lack of agreement by a second director to the proposed sale. Mr. Suh, an original incorporator, is argued to be the second director. However, the Bylaws indicate that the corporation will only have one

director and indicate that that director is Mr. Huh. Further, Mr. Suh testified he never attended an official board meeting, never made a decision of any nature as to the running of the corporation, never voted for officers, never looked at the financial statements, and did not even open mail received concerning the corporation but turned such over to Mr. Huh. He was also never aware of the corporate status, either terminated nor reinstated, and never did any act in the capacity of a corporate director. To quote Mr. Suh, "selling his business was Mr. Huh's business."

## Analysis

There are two critical issues which require analysis in the Court's decision. The first issue is who were the director(s) of Falls Church Amoco, Inc., if any, on the contract date of March 7, 2001. The second issue is, if there were no directors of the corporation on the contract date by virtue of the involuntary corporate dissolution, who holds title to the subject property and who or what entity has the legal ability to sell or convey title to the property.

To determine the identity of the corporate director(s) at the time the sales contract was executed, the Court must look to the corporate records received in evidence at trial as well as the testimony of the witnesses. The Articles of Incorporation appended to the August 29, 1994, Certificate of Incorporation list two initial directors; Mr. Huh and Mr. Sung Ho Suh, the registered agent. Thereafter, on September 1, 1995, the minutes of the first meeting, the "organizational meeting," listed "all of the directors" as Mr. Huh and is signed solely by Mr. Huh as director. When this evidence is taken with the testimony of Mr. Suh, the only conclusion available is that as of the first meeting, the "organizational meeting," Mr. Huh was the sole director. Indeed the testimony of Mr. Suh and his total lack of involvement in any corporate matters supports this decision. The evidence further disclosed that the meeting of September 1, 1995, was the only formal corporate meeting the corporation ever conducted. No minutes of any other corporate activity, meeting, election of officers or directors, or other corporate formality exist.

The Defendants point to various documents created by Mr. Huh as proof that the corporation had two directors. However, this argument fails because it fails to account for the election of "all directors" at the first meeting, the non-existent status of the corporation due to the repeated terminations of corporate existence, and the lack of any corporate meeting other than the first organizational meeting where any other director could have been elected.

It was clear to the fact finder, that the testimony of Mr. Huh and Mrs. Huh lacked credibility or veracity. It also appeared that, whatever form the

business took during the years of operation, either corporate or non-corporate, Mr. Huh was the individual and the only individual controlling this business. The Court finds as a matter of law and fact that Mr. Huh was the sole director of the Falls Church Amoco, Inc., at all relevant times herein.

The second issue, the title, requires reference to the laws governing corporations in Virginia. Virginia Code § 13.1-752, which was referenced by both sides of this dispute, provides the answer.

> If any domestic corporation fails to file the annual report required by this chapter in a timely manner, the Commission shall mail notice to it of impending termination of its corporate existence. Whether or not such notice is mailed, *if the corporation fails to file the annual report before the last day of the fourth month immediately following its annual report due date each year, the corporate existence of the corporation shall automatically cease as of that day and its properties and affairs shall pass automatically to its directors as trustees in liquidation. The trustees shall then proceed to collect the assets of the corporation; sell, convey, and dispose of such of its properties as are not to be distributed in kind to its shareholders; pay, satisfy, and discharge its liabilities and obligations; and do all other acts required to liquidate its business and affairs.* After paying or adequately providing for the payment of all its obligations, the trustees shall distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

Va. Code § 13.1-752(A) (emphasis added). Clearly, under this provision, "property" passes to the director(s) as trustees automatically as of the day the corporate existence ceases. In this case, the property passed to Mr. Huh, as trustee, by virtue of being the sole director. Indeed, as the corporation was not in existence at the time of the taking of title from Amoco Corporation, title flowed directly to Mr. Huh, the sole corporate director.

As title holder, Mr. Huh, and Mr. Huh alone, had the power to transfer the property of the corporation. Upon the execution of the contract for sale of real estate, the equitable title passed to the purchaser under the doctrine of equitable conversion. "The doctrine of equitable conversion is a pure creature of equity, unknown to the law, and is a mere incident or application of the maxim that equity treats that as done which ought to be done. Under it, land which is directed to be converted into money is treated as money,

and money which is directed to be invested in land is treated as land." *Robinson v. Lee*, 205 Va. 363, 365-66, 136 S.E.2d 860, 862 (1964) (citing *Moore v. Kernachan*, 133 Va. 206, 211, 112 S.E. 632, 633 (1922)).

Throughout the trial and during argument, the defendant's position centered upon the defense of corporate formality, i.e., that without the approval of the alleged second shareholder, there could not be a valid contract. The laws of the Commonwealth are meant for the protection of those who incorporate and comply with the statutes controlling corporate existence, it would be inequitable to permit one to act as an individual when it suits their needs and take cover under the corporate protections when it is convenient. Mr. Huh, by his actions, and as established by the evidence and his testimony, represented himself as the sole owner of this improved realty; he signed the sales contract and the addendum to the contract individually. He represented to his realtor that he was the sole owner, and indeed because of the lack of any corporate status at the time of the contract of sale was executed, Mr. Huh was, by statute, the sole person responsible for dealing in the former corporate assets.

## Conclusion

Because of the character of the title at the time of the contract of sale, i.e. vested in the sole director as trustee, and because of the course of conduct of the defendants, in either failing to maintain corporate status, formality, etc., and dealing individually, it must be concluded that the sales contract is enforceable in equity. As such, Complainant is awarded specific performance of the Contract for Sale dated March 7, 2002, and Amended April 6, 2002. Complainant should also recover its attorney's fees in the amount of $17,110.00 plus $718.50 in costs which are supported by an affidavit produced by Complainant's counsel and which the Court finds to be reasonable. The plaintiff's plea for damages arising from the operation of this property which might have occurred in the future is speculative and is denied by the court.