# CHARLESTON.

STATE *v.* AMERICAN BAPTIST HOME MISSION SOCIETY *et al.*

Submitted April 22, 1924.    Decided May 13, 1924.

1.  CORPORATIONS—*Exceeding Authority in Purchase of Land Does Not Prevent Title Passing to Corporation.*

    Although a corporation has exceeded its powers in the purchase of land, that fact does not prevent the title thereto from passing to the corporation.  (p. 450).

2.  SAME—*May Convey Indefeasible Title to Land Held in Excess of Powers.* .

    While the State, in a proper proceeding for that purpose, might have overthrown the title of a corporation holding real estate in excess of its powers, not having done so, the corporation may in the meantime convey an indefeasible title to another.  (p. 450).

3.  CONVERSION—*Conveyance to Trustee With Direction to Sell and Apply Proceeds Works Conversion.*

    A conveyance of land, by one having the right to convey, to a trustee, with direction to sell immediately and apply the proceeds thereof to the use and benefit of the beneficiary named in the deed, works a conversion of the real estate into personalty, which takes effect upon the execution of the conveyance.  (p. 451).

Case Certified from Circuit Court, Kanawha County.

Information in nature of quo warranto by the State against the American Baptist Home Mission Society and others. The court overruled demurrers of defendants, and certified the questions involved. .

*Ruling reversed, and demurrer sustained.*

*Haymond & Fox,* and *Mathews, Campbell & McClintic,* for the State.

*E. B. Templeman* and *W. E. R. Byrne,* for defendants.

MILLER, JUDGE:

By leave of the court, E. T. England, Attorney General of the State of West Virginia, filed in the circuit court of Kanawha County his information in the nature of a writ of

quo warranto, praying that process be issued against the American Baptist Home Mission Society, a corporation under the laws of the State of New York, John S. Stump, Trustee, John S. Stump, an individual, and the Latin-American Improvement Association, Inc., a corporation, and that they be required to answer by what warrant they claim to have, hold and assume to exercise and enjoy the right, privilege and authority to take and hold title to certain real estate described in the said information, and why certain deeds from Danied Huffman to the Mission Society and the said Stump, as well as other certain deeds between the parties defendant, should not be cancelled, annulled and set aside, and why judgment of ouster should not be entered against the said American Baptist Home Mission Society as to the land named therein. The circuit court overruled the joint and several demurrers of the parties defendant, and has certified to this court the questions arising thereon.

The facts, as they appear from the information filed by the Attorney General, are as follows: Daniel Huffman, a Baptist minister, then in his eighty-fifth year, on November 11, 1907, conveyed to the American Baptist Home Mission Society, a corporation under the laws of the State of New York, several hundred acres of land lying in Gilmer, Calhoun and Braxton counties, this state, reserving to himself for and during his natural life possession and control of the same, together with the rents, issues and profits thereof, and bonding said lands for a sum not to exceed $4,500.00, to cover such bequests as he might make in his will. On September 20, 1909, the said Daniel Huffman conveyed the same lands to John S. Stump, alleged to be an agent and employee of the Mission Society. This deed recites that the reason for its execution was that some doubt had arisen whether or not the grantee in the former deed could take and hold the amount of real estate conveyed by that deed, under the laws of this state, and contained, also, the further provision: "It is expressly understood between the parties hereto that this deed is not intended as a repudiation of the deed so made to the American Baptist Home Mission Society, and is only intended to pass title to the grantee herein in the event the first mentioned deed shall be held to be void and to pass no title." By

deed of June 12, 1912, the American Baptist Home Mission Society conveyed to said Stump the property in question, the deed reciting a consideration of one dollar, and the further purported consideration of $10,000.00, for which the said Stump was to execute his note, on which payment of interest was not to begin until after the death of the said Huffman; and Stump was to be released from the payment of said sum of $10,000.00, if the deed of November 11, 1907, should be held void by any court of the State of West Virginia or of the United States. This deed further stipulated that the said Stump should assume all the undertakings of the Mission Society under the former deed.

Daniel Huffman died in March, 1916. On April 11, of that year, John S. Stump conveyed to the Latin-American Improvement Association, Inc., a corporation under the laws of the State of New York, all the real estate conveyed to him by Huffman and the Mission Society, in consideration that the grantee assume the $10,000.00 note executed by Stump June 25, 1912. The same day the Latin-American Improvement Association conveyed to John S. Stump, Trustee, the same property, subject to the following uses, trusts and conditions:

"The said real estate shall be sold immediately and the proceeds of sale and the rents, issues and profits prior to sale shall be applied, first, to the satisfaction of the liens and debts with which said real estate was charged when it was conveyed by the said Daniel Huffman and said The American Baptist Home Mission Society to said John S. Stump, by the deeds hereinbefore mentioned, which liens and charges so far as the parties hereto are advised, consist in the obligation to make up any deficiency necessary to satisfy the specific bequests or legacies contained in the last will and testament of Daniel Huffman, up to and not to exceed the sum of Four Thousand Five Hundred Dollars ($4,500.00), the second, to apply the residue of said proceeds to the use and benefit of said The American Baptist Home Mission Society, a corporation under the laws of the State of New York."

And on the same day, the said grantor granted to Stump full power and authority to sell and convey all or any part of the real property conveyed to him by its deed.

It is the contention of the Attorney General that each and every one of the transactions mentioned in the information is a shift or device to enable the Mission Society to take and hold the property in question ,in contravention of the constitution and statutes of the State of West Virginia. The constitution, article 6, section 47, provides: "No charter of incorporation shall be granted to any church or religious denomination. Provisions may be made by general laws for securing the title to church property, and for the sale and transfer thereof, so that it shall be held, used, or transferred for the purpose of such church, or religious denomination." Section 7, chapter 57, Code 1923, provides that any church, religious sect, society, congregation or denomination may take and hold, by its trustees, "not to exceed four acres of land in an incorporated city, town or village, and not exceeding sixty acres out of such city, town or village."

The first question presented is whether the Mission Society, a corporation under the laws of the State of New York, took, by the deed from Huffman, title to the land in controversy which it could convey to others. The law seems to be well settled that where a corporation exceeds its powers in the purchase of land that fact does not prevent title thereto from passing to the corporation; and until such title is attacked by the state, the corporation may transfer its title to another. *Fritz* v. *Palmer,* 132 U. S. 282; *Barnes* v. *Suddard,* 117 Ill. 237; *Banks* v. *Poitiaux,* 3 Rand. 136; *Fayette Land Co.* v. *L. & N. R. R. Co.,* 93 Va. 274; 3 Thompson on Corporations, (2nd ed.) §§2390-2391, and cases cited; *Bank* v. *Fisher,* 52 Wash. 246, 17 Ann. Cas. 526, and the numerous cases cited and reviewed in note at page 529. In *Banks* v. *Poitiaux, supra,* where the banks were authorized to hold such real estate as was requisite for their immediate accommodation in relation to the convenient transaction of their business, they had purchased real estate in excess of the amount needed for the erection of their banking houses. They contracted with defendant to convey to him the surplus land. In a suit by the banks for specific performance, defendant contended that the banks had no authority to deal in real estate and could not make a good deed to him. It was held that the legal title to the property passed to the banks by the deed

to them, and their conveyance would effectually transfer that title to another, which in the hands of their grantee would be indefeasible; that the deed to the banks was not void, but only voidable.   In *Bank* v. *Matthews,* 98 U. S. 621, it was said: ''Where a corporation is incompetent by its charter to take real estate, a conveyance to it is not void.''   In *Fritz* v. *Palmer, supra,* it was said by Mr. Justice Harlan, ''that where a corporation is incompetent by its charter to take real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object.   It is valid until assailed in a direct proceeding instituted for that purpose.''     Here no attempt was made to attack the validity of the title of any of the defendants, until after deed made to Stump, Trustee, by the Latin-American Improvement Association.   In view of the authorities cited, we are of opinion that the Mission Society, or John S. Stump holding for it, if it may be said he was holding for it, and the Latin-American Improvement Association had good legal title to the property in question, which they might convey to others, since no attempt was made by the State to question their title until after the conveyance to Stump, trustee, with direction to sell immediately for the benefit of the Mission Society.

It will be noted that the deed from the Latin-American Improvement Association to Stump, Trustee, directed that the land be sold immediately, and that the proceeds be applied as provided therein.   There were no conditions imposed on the direction to sell.   The duty of the trustee to sell was imperative; he was left with no discretion, and was not limited to any contingency.   Where there is such a direction to the trustee to sell, the conveyance works a conversion of the property from real to personal, which takes place upon the execution of the deed. 3 Pom. Eq. Jur. (4th Ed) §§1159-1162; 2 Story Eq. Jur. (2nd ed.) §1091; 13 C. J. 854, 857; 3 Enc. Dig. Va. & W. Va. Rep. 503; *Zane* v. *Sawtell,* 11 W. Va. 43; *Board of Trustees* v. *Blair,* 45 W. Va. 812.   In *West Virginia Pulp & Paper Co.* v. *Miller,* 176 Fed. 284, where the testator had devised certain lands in West Virginia to a trustee to sell and dispose of them and pay over the proceeds to the First Spiritualist Church of Baltimore City, in a suit by the heirs of the testator, it was held by the Circuit

Court of Appeals that "the will worked an equitable conversion of the land into money, and that the constitutional and statutory provisions of West Virginia, limiting the amount of land which a religious denomination could own or hold, did not affect its validity." In the case of *Commonwealth* v. *Martin's Exrs*, 5 Munf. 118 there was a devise of land to the executors, with directions that the same be sold and the proceeds paid to aliens. Aliens were debarred from holding land in Virginia. The court held that the conversion of the realty into personalty was worked by the will immediately upon the death of the testator, and that the alien legatees were entitled as upon a bequest of personalty. We are of opinion that the deed to John S. Stump, Trustee, worked a conversion of the real property conveyed into personalty, and that the holding thereof by him was for the purpose of executing the trust and not a holding for the beneficiary, the Mission Society, as the equitable owner of the lands.

Our conclusion is that the circuit court erred in overruling the demurrer to the information filed by the Attorney General.

*Ruling reversed, and demurrer sustained.*