PETER JENSEN, TRUSTEE, APPELLANT, V. A. BALLMER, APPELLEE.

FILED JULY 2, 1931. No. 27951.

*Frank M. Johnson, John J. Ledwith* and *I. D. Beynon,* for appellant.

*Cook & Cook, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This is an action brought by Peter Jensen, as trustee for the depositors of the Farmers State Bank of Cozad, for the purpose of enforcing specific performance of a contract between him as such trustee and Ballmer for the sale of certain real estate which is being held by the said Jensen in trust for the depositors of the bank. The trial court denied a decree of specific performance.

The defendant alleges in his answer that the plaintiff refused to furnish to the defendant a good and sufficient abstract of title in the real estate involved, as provided

by the terms of the contract. It is further alleged in the answer that the real estate was formerly owned by the Farmers State Bank of Cozad and that said bank was reorganized and reopened under the provisions of section 8-181, Comp. St. 1929; that the said real estate was a part of the slow and doubtful assets of the said bank which was purchased by the depositors and unsecured creditors of said bank by virtue of an agreement entered into by the depositors and unsecured creditors and the reorganizers of the bank, in consideration for which the depositors gave up 50 per cent. of their deposits.

The question is: Has the appellant tendered to the appellee a good and sufficient abstract of title showing good title of record to the premises and a good and sufficient warranty deed conveying the premises to appellee in fee simple, free from incumbrances, as provided by the contract? It is conceded that the Farmers State Bank had a good title of record to the premises involved at the time when the bank was taken over and closed by the department of trade and commerce. All objection to the title grows out of matters subsequent to the closing of said bank. After the bank was closed an effort was made to reorganize and reopen it under the provisions of section 8-181, Comp. St. 1929. In pursuance of this purpose, an agreement was signed by depositors representing 87 per cent. of the deposits, which contract was approved by the department of trade and commerce. It thereupon became binding under the statute upon all of the depositors, whether they had signed the same or not. The contract provided that the deposits should be reduced 50 per cent. and that the remaining 50 per cent. of the deposits should in effect purchase certain slow and doubtful assets of said bank, which were to be conveyed to the trustee, who should convert the same to cash and from said proceeds pay dividends to the various depositors.

The trust was created in this case by the agreement of the depositors and creditors to accept the slow and doubt-

ful assets of. said bank in consideration of 50 per cent. of their deposits. It was agreed that these assets should be held and liquidated by a trustee for the benefit of the depositors. This bound those who signed the agreement, and since that number was equal to 87 per cent. of the deposits, it was by operation of law binding upon the remainder the same as though they had voluntarily entered into it. Section 8-181, Comp. St. 1929, under which the reorganization of this bank was accomplished, is as follows:

"If the secretary of the department of trade and commerce with a view of restoring the solvency of any bank of which the department has taken charge pursuant to law shall approve a reorganization plan entered into between depositors and unsecured creditors representing eighty-five per cent. or more of the total amount of deposits and unsecured claims of such bank on one hand and the bank or reorganizers thereof on the other, then and in such case all other depositors and unsecured creditors shall be held to be subject to such agreement to the same extent and with the same effect as if they had joined in the execution thereof, and their claims shall be treated in all respects as if they had joined in the execution of such articles of reorganization, in the event of restoration of such bank to solvency and the reopening of the same for business. Any county, city, village, town or school district, through its governing board, and the state, through the governor, may enter such agreement."

The agreement entered into by the depositors and the reorganizers of the bank, and approved by the secretary of the department of trade and commerce under the above quoted statute, provided that certain slow and doubtful assets of said bank should be, in consideration of 50 per cent. of deposits, "transferred, assigned and conveyed by said bank to a trustee selected and designated by the depositors, *to be held and liquidated by* said trustee, under the supervision and approval of the depositors' board of

control, for the benefit of the undersigned and other depositors and creditors participating in the aforesaid purchase and distributed to them in proportion to their respective interests." (Italics ours.) Where property is conveyed to a trustee, under an agreement between the depositors and the reorganizers of a state bank, as provided by section 8-181, Comp. St. 1929, for the purpose of liquidation and distribution to depositors and creditors, there is created an express trust. In such a case, the trustee is authorized to sell said assets, in the manner provided by the contract.

We think that the doctrine of equitable conversion is applicable to this case, since there was a conveyance to the trustee by agreement, with authority to sell and distribute the proceeds. In *State v. American Baptist Home Mission Society*, 96 W. Va. 447, it was said: "It will be noted that the deed from the Latin-American Improvement Association to Stump, trustee, directed that the land be sold immediately, and that the proceeds be applied as provided therein. There were no conditions imposed on the direction to sell. The duty of the trustee to sell was imperative; he was left with no discretion, and was not limited to any contingency. Where there is such a direction to the trustee to sell, the conveyance works a conversion of the property from real to personal, which takes place upon the execution of the deed"—citing, 3 Pomeroy, Equity Jurisprudence (4th ed.) secs. 1159-1162; 13 C. J. 854,857; 6 R. C. L. 1074. There is no limitation in this case upon the authority of the trustee to sell except the approval of the depositors' board of control. Construing the agreement, there is a positive direction to the trustee to sell, by and with the approval of the depositors' board of control, and when the real estate, which was a part of the slow and doubtful assets purchased by the depositors, was conveyed to the trustee, the conveyance effected a conversion of the property from realty to personalty. In the operation, the creditors did not acquire an undivided

equitable interest in any of the real estate so conveyed. The depositors in the said bank have an interest only in the proceeds of sale, and not in the land itself. *Rodisch v. Moore*, 266 Ill. 106. This doctrine of the law is well recognized in this state. It has been applied in this state in the case of wills, but is equally applicable here. *Chick v. Ives*, 2 Neb. (Unof.) 879, held: "Where the provisions of a will are of such character as to amount to a positive direction to convert the real estate into money or personalty, or where by a fair construction of the will such intention of the testator is clearly shown by implication, a court of equity will decree that an equitable conversion of the real estate of the testator into money, or personalty, took place at the time of his death." See, also, *Arlington State Bank v. Paulsen*, 57 Neb. 717. Applying this doctrine to the case at bar, we are of the opinion that, where the provisions of a contract executed under the provisions of section 8-181, Comp. St. 1929, between the depositors and the bank or reorganizers thereof, are of such character as to amount to a positive direction to convert the real estate into money, an equitable conversion of the real estate into money is accomplished by the contract. The trustee was authorized and directed to liquidate and convert into money and distribute according to the agreement in the office of the secretary of the department of trade and commerce. The only limitation was that his act be approved by the depositors' board of control. Such a committee was selected by the depositors in this case and approved the contract which is the subject of this controversy. The conveyance under the contract to the trustee did not invest any depositor or creditor with an undivided equitable interest in the real estate.

The appellee relies upon *Shonsey v. Clayton*, 107 Neb. 695, in which it was said that a title to be good and marketable must be free from reasonable doubt either in law or in fact. The appellee contends that the title in this case is not free from reasonable doubt, and that there-

fore, under the authority of said case, the contract ought not to be enforced. In the instant case, there is no reasonable doubt as to the sufficiency of the title, to bring it within the rule of the cited case.

From an examination of the record, we are of the opinion that, under the contract and agreement of the depositors and the conveyance by the bank to the trustee of the land, the said trustee had the right of conveyance, subject only to the approval of the depositors' committee; and that the trustee could convey a good and marketable title to the real estate. The judgment of the district court is reversed, with directions to enter a decree of specific performance.

REVERSED.