# Richmond

## Fred Nuttall v. Charles M. Lankford, Jr., Commissioner of Fisheries, et als.

June 9, 1947.

Record No. 3191.

Present, All the Justices.

The opinion states the case.

*Charles S. Smith, Jr.,* and *Ammon G. Dunton,* for the appellant.

*R. O. Norris, Jr., F. V. Watkins, Lewis Jones* and *B. Drummond Ayers,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the right of Morattico Packing Company, Incorporated, to possession of certain oyster planting grounds in the bed of the Rappahannock river, in Lancaster county. The case turns on the interpretation of section 3193 which was inserted in the Code of Virginia by the Acts of 1936, ch. 393, pp. 650, 673, and thereafter amended by the Acts of 1938, ch. 391, p. 712 (Michie's Code of 1942, sec. 3193). The pertinent portions of the statute are copied in the margin.[1]

[1] "Section 3193. Oyster planting grounds; what ground may be applied for; eligible applicants; how to apply; notice to be posted; newspaper notice.—.

"(1) The residue of such water front in excess of what is already assigned, or is reserved for the riparian owner, and the residue of the beds of the bays, rivers, creeks, and shores of the sea other than natural oyster beds, rocks, or shoals, as defined by law and included in the Baylor survey, may be occupied for the purpose of planting or propagating oysters thereon.

"(2) Application for assignment of oyster-planting ground may be made by any resident of the State, or by any firm, or corporation chartered under the laws of this State for the purpose of oyster culture and the oyster business; and it shall be lawful for nonresidents to be stockholders in such a firm or corporation provided said firm or corporation employ only resident labor in planting, cultivating, selling, and marketing the oysters grown on the ground or land so occupied; and provided its principal place of business for selling and marketing said oysters be maintained within this State, and the provisions of this section shall be incorporated in any lease of oyster ground to any such firm or corporation, the violation thereof shall forfeit the lease.

"(3) All applications for assignment of oyster-planting grounds shall be made in writing to the inspector of the district wherein the ground lies, in duplicate. The application shall state as near as may be the number of acres applied for and definite location, with the name of one or more

In May, 1946, Fred Nuttall, the appellant, filed in the court below a bill for a declaratory judgment against Hon. Charles M. Lankford, Jr., Commissioner of Fisheries, J. E. Blakemore, the local oyster inspector, Morattico Packing Company, Incorporated, a Virginia corporation, and Lord Mott Company, a Maryland corporation, as defendants.

The bill alleged that the complainant was a resident of the State of Virginia; that on January 5, 1946, he had made written application to Blakemore, the local oyster inspector, to rent approximately 133 acres of oyster planting ground in the bed of the Rappahannock river, in Lancaster county, and had accompanied such application with the necessary deposit; and that on January 16 the inspector had returned the application to the complainant, stating that he (the inspector) had been instructed by the Commissioner of Fisheries to do so, for the reason that the planting grounds had been leased to the Morattico Company.

prominent points or objects adjacent to said ground. A duplicate copy of this application shall be immediately forwarded to the office of the Commission of Fisheries by the inspector. It shall be the duty of any resident, firm, or corporation desiring to obtain a location for planting or propagating oysters to apply to the inspector of the district in which such land lies to have the location ascertained, designated, surveyed, and assigned.

"(4) No assignment shall be made of any piece of ground containing more than ten acres until notice of application has been published once a week for at least four weeks in some newspaper published in the county wherein the said ground lies; and if no newspaper be published in the said county, then it shall be published once a week for at least four weeks in some newspaper having general circulation therein. This said provision is in addition to the sixty-day posting of the application required.

"(5) Notice of the said application shall be posted by the inspector for not less than sixty days at the courthouse of the county in which the ground lies, and at two or more prominent places in the vicinity of said ground.

"(6) Sixty days after posting of the notice of application, the inspector shall notify the county surveyor, or such surveyor as may be designated by the Commission of Fisheries, to proceed to survey said ground, conforming to the rules and regulations of the Commission of Fisheries, and make a plat in duplicate of the same. The surveyor shall forward the plat of survey to the office of the Commission of Fisheries to be approved by the engineer of the Commission within thirty days, before same is assigned by the inspector. The ground shall be marked at the expense of the applicant, at the time the survey is made, and at the direction of the

The bill further alleged that while the Morattico Company claimed the right of possession of the oyster grounds, as lessee thereof from the Commonwealth of Virginia, the grounds were actually in the possession of Lord Mott Company, a foreign corporation; that the Morattico Company was merely "a nominal corporation owned by the Lord Mott Company;" and that the Morattico Company was "a device to evade the statute law of the State of Virginia which does not permit a nonresident corporation to hold oyster planting ground in this State."

Moreover, the bill alleged that even if the Morattico Company were a *bona fide* Virginia corporation, its purported leases of the oyster grounds were void, because they had not been lawfully renewed within the next preceding twenty years.

The prayer of the bill was, in substance, that the lower court enter a declaratory judgment declaring (1) that the Morattico Company had no valid lease from the Common-

surveyor, with suitable stakes, smooth and free from snags and spurs; * * * .

* * * * * *

"(8) No assignment, except in Chesapeake Bay, shall exceed two hundred and fifty acres. * * *

* * * * * *

"(12) Such an applicant shall pay to the inspector the annual rental for the said ground at the rate of one dollar per acre per annum. * * * .

"(13) Each assignment shall continue in force for a period of twenty years from the date of assignment; and if such applicant shall hold such ground for the full period of twenty years and at the expiration thereof decide to continue to hold the same and to have the lease renewed, then, provided such ground is still open to lease under the then existing law, such applicant shall have prior right over all others for a renewal of the lease of the ground; subject to any such laws or regulations as the General Assembly may enact or prescribe, and to such rental as may be then fixed by law. The interest in such ground shall be construed as a chattel real, and at the death of the renter pass into the hands of the personal representatives for the benefit of any creditors or heirs of the decedent. Should any lessee of oyster-planting ground, or bathing ground, have his ground or any portion thereof re-surveyed or should he re-assign any or all of the ground, this said re-survey or re-assignment shall not be construed to be a twenty-year renewal of his lease, or as a new assignment of such ground, but shall be deemed to be a continuation of the original

wealth of Virginia for the oyster planting grounds in question; (2) that at the time of the complainant's application, filed with the local oyster inspector, the planting grounds were "open to lease;" and (3) that the local oyster inspector should have proceeded to take the necessary steps to consummate a lease of the grounds to the complainant.

Each of the defendants, except the local oyster inspector, filed an answer to the bill. The Morattico Company alleged that it was a *bona fide* corporation, duly chartered and existing under the laws of the State of Virginia for the purpose of engaging in all forms of oyster business, including that of planting, culturing, selling and marketing oysters grown on planting grounds which had been duly rented to it under the laws of this State. It insisted that it was in lawful possession of the planting grounds in question under valid leases from the Commonwealth of Virginia, duly assigned to it,[2] and denied that such lands were in the possession of Lord Mott Company. The Morattico Company also denied that its incorporation was for the purpose of evading the laws of this State.

---

assignment, subject to all the limitations and conditions under which such grounds were originally assigned.

"(14) Any person, firm or corporation in possession of any .oyster-planting ground which has not been assigned according to law shall have no preference as to having the same assigned to him, but such ground shall be open to the first applicant.

"(15) The plat and assignment, as soon as practicable after completion, and after the said ground shall have been assigned to the said applicant, shall be filed for record by the inspector in the office of the Commission of Fisheries, and in the office of the clerk of the county by the Commissioner of Fisheries. * * * "

*Note:* Paragraphs 12, 13, 14 and 15 are here numbered as they appear in Michie's Code of 1942. In the 1938 Act they are numbered 13, 14, 15 and 16, respectively.

[2] Code, section 3195, as amended, permits the subrenting or assigning of the rights of the tenant from the Commonwealth "to a resident of this State, firm, or corporation authorized by law to occupy and hold oyster-planting ground." Under this section such subrenting or assigning shall be in writing which "shall describe accurately the ground subrented or assigned," and recorded in the clerk's office of the county where the original assignment was required to have been recorded.

The Lord Mott Company denied that it was in possession of the oyster grounds in question, or that it was engaged in the cultivation or planting of oysters in the State of Virginia. While it admitted that R. E. Roberts, a resident of Baltimore, owned the majority stock in both corporations, it denied that the Morattico Company was a "dummy" corporation designed and incorporated for the purpose of violating the laws of Virginia with respect to the cultivating and planting of oysters.

In his answer the Commissioner of Fisheries admitted that he had directed the local oyster inspector to return the application which the complainant, Nuttall, had filed on or about January 5, 1946, for the lease of these oyster grounds. This was, he alleged, because the records in his office showed that these lands were at that time in the lawful possession of the Morattico Company.

After the evidence had been heard *ore tenus*, the trial court entered a decree dismissing the bill, and from this decree the present appeal has been taken.

There are a number of assignments of error which present these principal contentions:

First, it is said, the lower court erred in holding that the appellant's evidence failed to show that the Morattico Company was a mere "dummy" corporation, owned either by Lord Mott Company, a Maryland corporation, or by R. E. Roberts, a citizen of Maryland, and designed and chartered for the purpose of enabling this foreign corporation or this nonresident to hold and operate oyster planting grounds, contrary to the provisions of paragraph (2) of the statute.

We are of opinion that the trial court's disposition of this phase of the case was entirely correct.

The certificate of incorporation of the Morattico Company shows that it was chartered under the laws of Virginia on November 12, 1926, for the specific purpose of engaging in the oyster business, as required by paragraph (2) of the section. Its principal office is stated to be at Lancaster, Virginia,

and two out of the three incorporators are listed as being residents of this State.[3]

The Morattico Company proved its record title, by proper assignments, to each of the leases. It also showed that on January 22, 1946, the local oyster inspector had executed and delivered to it formal renewals of the leases for a period of twenty years, and that these had been duly recorded.

R. Earle Mills was called as an adverse witness by the appellant. It developed from his testimony that he was a stockholder, director, and vice-president of the Morattico Company in charge of its plant located near Urbanna and of the oyster grounds which are the subject of this litigation. Mr. Mills is a resident of Virginia. He further testified that Hon. Robert O. Norris of Lancaster county, Virginia, counsel for the corporation, is also a stockholder and director of the Morattico Company.

The uncontradicted evidence is that the Lord Mott Company is engaged in the business of packing fruits and vegetables, and that while it maintains a plant for this purpose in Middlesex county, Virginia, it does not engage, in any manner, in the oyster business, and has no interest therein beyond that of a stockholder in the Morattico Company.

In the face of this uncontradicted evidence the appellant apparently abandoned his claim that the operator of the business of planting, cultivating and harvesting oysters on the grounds in question was the Lord Mott Company, for which the Morattico Company was the mere "front." He undertook, from the cross-examination of Mr. Mills, to identify either R. E. Roberts of Baltimore, who conducts an oyster business under the trade name of Remlik Oyster Company, or R. E. Roberts, Incorporated, a Maryland corpora-

---

[3] Paragraph (2) of section 3193 permits nonresidents to be stockholders in such a corporation provided it employes "only resident labor in planting, cultivating, selling, and marketing the oysters grown on the ground or land so occupied;" and provided further, that "its principal place of business for selling and marketing said oysters be maintained within this State."

The answer of Morattico Company alleges that these provisions of the statute are complied with, and there is no evidence to the contrary.

tion engaged in the business, as the real cultivator of the planting grounds and the nonresident offender.

The lower court refused to allow the appellant to amend his bill to effect such an allegation, and that is the subject of an assignment of error. However, an analysis of the evidence will show that even if the amendment had been permitted the charge is not sustained.

The main features developed from Mr. Mills' testimony, which the appellant claims sustains his charge, are that R. E. Roberts is the majority stockholder in the Morattico Company; that Roberts is engaged in the oyster business individually, under the name of Remlik Oyster Company; that he is the majority stockholder in R. E. Roberts, Incorporated, a Maryland corporation similarly engaged; that the ground rentals for the lands in question, occupied by the Morattico Company, were at times paid by the checks of Remlik Oyster Company; that the plants of the Morattico Company, Remlik Oyster Company and Lord Mott Company are located together on a small island in the Rappahannock river, near Urbanna; and that the Morattico Company sells its entire oyster output to Remlik Oyster Company.

But these circumstances do not prove, as the appellant claims, that the Morattico Company, the Remlik Oyster Company, and R. E. Roberts, Incorporated, are one and the same, or that their association is a device designed for the purpose of enabling a foreign corporation or a nonresident to engage in the business of planting or raising oysters on lands leased from the Commonwealth, in the evasion of its laws. The appellant's allegation is one of deliberate fraud. It is elementary that such a charge must be clearly proved. We are of opinion that the evidence relied on by the appellant falls far short of this.

While the plants of these several enterprises are located adjacent to one another, the testimony is that the business of each is conducted separately in separate buildings.

It is a matter of common knowledge that business transactions of this character are carried on between closely asso-

ciated corporations without destroying or merging their respective corporate entities. Neither is the corporate entity destroyed because a corporation does business with one of its stockholders. There is nothing strange or sinister in the fact that the Morattico Company sells oysters, planted, cultivated and grown by it through its own resident employees, using its own boat and equipment, to a foreign corporation or a nonresident individual. Nor does the statute prohibit this.

It is true that Mr. Mills testified that some of the ground rentals had been paid to the local oyster inspector by the checks of the Remlik Oyster Company. But it is a fair inference from his testimony that these payments were treated as mere advances and charged to the Morattico Company in settlement of their mutual accounts.

The appellant makes much of the fact that some of the testimony given by Mr. Mills in the present case is in conflict with the testimony given by him on a previous occasion in the prosecution of Lewis Crockett, in the Circuit Court of Middlesex county, for the unlawful dredging of oysters. It is unnecessary to detail these supposed discrepancies. Assuming, but not deciding, that some of Mr. Mills' statements made in the course of his testimony at the Crockett trial could be interpreted as admissions of the Morattico Company, of which he was the vice-president, nevertheless it was for the trial court, sitting as a jury, to say which of the statements should be accepted as true or correct. We, of course, cannot say that the lower court erred in accepting those statements which were favorable to the appellees.

The appellant next says that at the time his application was filed for a lease of the planting grounds, the original leases theretofore made by the agents of the Commonwealth to the Morattico Company's predecessors in title, which were limited to periods of twenty years from the dates thereof under the express wording of paragraph (13) of the section, had long since expired and had not been renewed, nor had any application for their renewal been filed. Hence, he says, the grounds were "open to lease" and the local inspector should have granted his application and leased them to him.

The argument here is that upon the expiration of the twenty-year period the leases automatically ended, and that it became necessary that they be re-leased or "re-assigned" by taking all of the steps outlined in the statute for an original lease or "assignment;" that is, by filing with the local inspector a written application, in duplicate, describing the number and location of the acres applied for, posting and publication of the notice of application, surveying and staking the area, recording a plat thereof, etc.

With the exception of a tract of 20.88 acres, a part of the planting grounds in question, which was leased from the Commonwealth in 1924, the record does not show the date of the original leases. But it is conceded that all of them have run for more than the twenty-year period, and that none has been renewed in the manner contended for by the appellant.

It is the position of the Morattico Company, fully supported by the Commissioner of Fisheries, that the statute prescribes no steps for the renewal of a lease; that the Commission has never construed the statute to mean that a renewal of a lease must be effected in the same manner detailed for consummating an original lease. On the contrary, the Morattico Company says, the Commission has always deemed that the continued payment of the ground rental by the lessee, or his assigns, and acceptance of the same by the Commissioner, constituted a sufficient renewal.

The evidence of such departmental interpretation of the law is not contradicted, nor is there any dispute as to the full payment of the ground rental.

It is quite true that the statute does not provide what steps must be taken to renew a lease at the end of the twenty-year term. It does not say that the ground must be reassigned to the present holder by following the same steps outlined for effecting an original lease. The only provision with regard to a renewal is that found in paragraph (13) which says that the holder, "should he decide to continue to hold the same," is given the "prior right over all others for a renewal of the lease of the ground."

In the case before us there is no doubt as to the intent of the parties. The fact that the Morattico Company continued, through the years, to pay the ground rental conclusively shows that it decided "to continue to hold the same." It was, in effect, an offer or application to renew the leases. By accepting the rent the Commissioner has accepted this offer and has acknowledged the Morattico Company as the tenant of his principal, the Commonwealth of Virginia. In other words, through the years, both parties have treated the leases as having been renewed, even though until recently no written renewals had been executed by the agency of the Commonwealth.

Moreover, this understanding between the parties was formally ratified when the local inspector, under the direction of the Commissioner of Fisheries, executed and delivered to the Morattico Company written re-assignments or renewals of leases for the grounds, dated January 22, 1946. While this was after the inspector had received and rejected the appellant's application, the Morattico Company, as has been pointed out, had long since, by a continued paying of the rental, indicated its desire and decision "to continue to hold" the grounds. In other words, the holder had, in effect, exercised the option granted to it under the statute to apply for a renewal of its leases long before the appellant's application was filed.

The Commission has interpreted this to be a sufficient renewal within the meaning of the statute. We cannot say that this interpretation is wrong. We have repeatedly said that in case of a doubtful meaning of a statute the practical construction given to it by public officials entrusted with its administration, acted upon by the people, and not changed by the General Assembly through the years, is decisive. *South East Public Service Corp.* v. *Commonwealth*, 165 Va. 116, 126, 127, 181 S. E. 448, 452, and cases there cited. That principle applies and controls here.

We are next urged to hold that the tenure of the Morattico Company of the lands is void, because the record

shows that among its predecessors in title were the Cape Charles Bank, Incorporated, and the Farmers and Merchants Trust Bank, both of which were banking institutions with their principal offices in this State, but not "chartered * * * for the purpose of oyster culture and the oyster business," as is required of the holder of such a lease by paragraph (2) of the section.

By deed dated March 31, 1910, Enoch B. Blackman and wife conveyed to L. E. Mumford and others, as trustees, certain property, including Blackman's rights in a large portion of the oyster grounds in controversy, to secure certain debts due to the Cape Charles Bank, Incorporated, and others. Default having been made in the payment of the debts, the deed of trust was foreclosed and the property purchased by Cape Charles Bank, Incorporated, to which the trustees conveyed it by deed dated September. 26, 1913. On November 15, 1915, the leases of the oyster lands were formally transferred by the local oyster inspector to the bank.

Subsequently the Cape Charles Bank was merged with the Farmers and Merchants Trust Bank, and in September, 1925, the latter transferred the leases to F. G. Lankford. Thereafter, through mesne transfers, the leases became the property of the Morattico Company in December, 1926.

At the time the Cape Charles Bank acquired the leases, either by the deed from the trustees in 1913, or by the transfer by the oyster inspector in 1915, the statute, as then written, provided that the oyster planting grounds might "be occupied by any *resident* of the State for the purpose of planting or propagating oysters thereon."[4] (Emphasis added.) The provision requiring a corporate holder to be chartered "for the purpose of oyster culture and the oyster business" was first inserted by the 1916 Act.[5]

We need not stop to inquire whether the Cape Charles Bank, by reason of its incorporation under the laws of this State, or the location of its principal office in this State,

[4] Acts 1910, ch. 343, section 6, p. 545.
[5] Acts 1916, ch. 461, section 6, p. 778.

was "a resident of the State" within the meaning of the statute at the time it acquired the leases. Nor is it necessary that we decide whether the bank had the right under its incidental powers to acquire the leases in order to protect its loan or investment.

Even if it be assumed that such acquisition was *ultra vires*, it is well settled that the bank's title to the property was not void, but was only subject to be avoided in a direct proceeding instituted by the State for that purpose; and that since its title was not overthrown in this manner the bank could, in the meantime, convey an indefeasible title to another. *Fayette Land Co.* v. *Louisville, etc., R. Co.*, 93 Va. 274, 289, 24 S. E. 1016; *Collins* v. *Doyle*, 119 Va. 63, 66, 89 S. E. 88; *State* v. *American Baptist Home Mission Soc.*, 96 W. Va. 447, 123 S. E. 440, 37 A. L. R. 200; 13 Am. Jur., Corporations, section 783, p. 807.

The final contention of the appellant is that the formal renewals of the leases to the Morattico Company, dated January 22, 1946, are void because certain provisions of paragraph (2) were not physically incorporated therein.

This paragraph, it will be recalled, permits a corporation chartered under the laws of this State "for the purpose of oyster culture and the oyster business," to hold oyster planting grounds. It likewise permits nonresidents to be stockholders in such a corporation, provided it "employ only resident labor in planting, cultivating, selling, and marketing the oysters grown on the ground or land so occupied," and provided further, that "its principal place of business for selling and marketing said oysters be maintained within this State." The section then concludes: " * * * the provisions of this section shall be incorporated in any lease of oyster ground to any such firm or corporation, the violation thereof shall forfeit the lease."

The argument is that the "provisions" are required to be incorporated or written into the lease in order that notice thereof may be brought home to the lessee corporation, and that the failure to include them renders the lease null and void.

While the punctuation is unfortunate the meaning of the section is plain. The purpose of the language is to specify the terms and conditions under which a resident corporation, with nonresident stockholders, may engage in the business of planting, cultivating, selling and marketing oysters on grounds leased by it from the State. It means that a lease to such a corporation is subject to these "provisions" or conditions which must be complied with. It is the "violation" of these stipulated "provisions" by the lessee, and not the failure of the State agency to "incorporate" or write them in the instrument, which the statute says "shall forfeit the lease."

It would add no force to the provisions to write them in the lease. Since the General Assembly has said that a lease is to be granted on these terms, such terms are binding both on the agency of the Commonwealth and on the lessee, whether they be actually written in the instrument or not.

On the whole, we are of opinion that the decree appealed from is plainly right, and accordingly it is

*Affirmed.*