Jerry **FALWELL, as Pastor of Thomas Road Baptist Church, and the Trustees of Thomas Road Baptist Church,** Plaintiffs,

v.

Clinton **MILLER, in his official capacity as Chairman of the State Corporation Commission,** Defendant.

**No. CIV.A. 6:01CV00075.**

United States District Court,
W.D. Virginia,
Lynchburg Division.

April 15, 2002.

See, also, 198 F.Supp.2d 765, 2002 WL 199516.

Jerry Falwell, Jr., Lynchburg, VA, Mathew D. Staver, Joel L. Oster, Erik W. Stanley, Liberty Counsel, Longwood, FL, for plaintiffs.

Walter C. Erwin, III, Lynchburg, VA, William Henry Hurd, Office of Atty. Gen., Richmond, VA, Alexander Wayne Bell, Mary V. Barney, Law office of Alexander W. Bell, Lynchburg, VA, for, City of Lynchburg, Randolph A. Beales, Jerry W. Kilgore, defendants.

Guy Winston Horsley, Jr., Office of Atty. Gen., Richmond, VA, Philip R. de Haas, State Corp. Com'n Counsel to Com'n, Richmond, VA, for Clinton Miller, defendant.

William F. Etherington, Beale, Balfour, Davidson & Etherington, P.C., for Larry B. Palmer, defendant.

Elaine Scott Moore, Office of Atty. Gen., Richmond, VA, for Honorable M.G. Perrow, defendant.

Edward Meade Macon, Office of Atty. Gen., Richmond, VA, for William Petty, defendant.

Rebecca K. Glenberg, Richmond, VA, for American Civil Liberties Union, amicus.

H. Robert Showers, Greber, Simms & Showers, Leesburg, VA, Stuart J. Lark, Gregory S. Baylor, Christian legal Soc, Annandale, VA, for Southern Baptist Conservatives of Va., Christian Legal Soc., amicus.

## OPINION

MOON, District Judge.

### I. INTRODUCTION

Plaintiffs Rev. Jerry Falwell and the Trustees of Thomas Road Baptist Church ("Thomas Road" or "the Church") have filed this civil rights and declaratory judgment action against Clinton Miller, in his official capacity as Chairman of the State Corporation Commission ("SCC") of the Commonwealth of Virginia. The Plaintiffs allege that because the SCC refuses to grant a corporate charter to the Church and its Trustees, Chairman Miller and the SCC have deprived them of their civil rights under the First and Fourteenth Amendments to the Constitution of the United States.

Chairman Miller asserts that because Article IV, § 14(20) of the Constitution of Virginia forbids the General Assembly from incorporating any church or religious denomination, the SCC has no discretion but to deny Plaintiffs corporate status. In fact, throughout these proceedings, the Chairman has chosen not to defend the federal constitutional merits of the Virginia provision. Instead, the SCC has argued only that the Plaintiffs have not sustained an injury sufficient to result in a case or controversy under Article III.

Both the Defendants and the Plaintiffs have moved for summary judgment.

Because this Court concludes that Article IV, § 14(20) of the Constitution of the Commonwealth of Virginia violates the Constitution of the United States, Defendant's Motion shall be DENIED and Plaintiffs' Motion shall be GRANTED.

### II. PROCEDURAL HISTORY & SUMMARY JUDGMENT STANDARD

In the Amended Verified Complaint which began this case, Plaintiffs filed suit under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02 against six Defendants. In doing so, the Plaintiffs challenged four laws: Article IV, § 14(20) of the Virginia Constitution, §§ 57–12 and 57–15 of the Virginia Code, and § 18–46 of the City Code of Lynchburg. Following a hearing on five of the Defendants' Motions to Dismiss, the Court concluded that the statutory claims pending against the City of Lynchburg, the Attorney General, the Clerk and Chief Judge of the 24th Judicial Circuit, and the Commonwealth Attorney for the City of Lynchburg were either moot or nonjusticiable. *See Falwell v. City of Lynchburg*, 198 F.Supp.2d 765, —— (W.D.Va.2002). As a result, Chairman Miller remains the only Defendant in this case and § 14(20) remains the only provision in controversy.

In contrast to his co-Defendants, Chairman Miller has adopted a peculiar procedural position in this case. First, he has chosen not to file an Answer to Plaintiffs' Complaint pursuant to Fed. R. Civ. Proc. 7 or 8. Second, he does not contest the merits of Plaintiffs' legal argument that § 14(20) violates the U.S. Constitution. Third, he has not challenged any of Plaintiffs' factual assertions, most notably their contentions that they have been denied corporate status.

While choosing not to respond to Plaintiffs' contentions, Chairman Miller nevertheless has moved for summary judgment for lack of a Case or Controversy. Plaintiffs, on the other hand, filed their Amended Verified Complaint on December 11, 2001, filed a Renewed Motion for Summary Judgment on January 9, 2002, and have opposed Defendant's Motion. Under the Pretrial Order, the Defendant had until January 23 to respond to Plaintiffs' Motion for Summary Judgment. Since the Defendant has chosen not to reply to Plaintiffs' Motion, the Court deems that Motion to be unopposed.[1]

Generally, summary judgment should be granted only if, in viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fash-* *ions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted).

In this case, however, Plaintiffs' Motion for Summary Judgment is unopposed. If a motion for summary judgment is supported by affidavit or a verified complaint and is unopposed, "summary judgment shall be entered ... against the adverse party." Rule 56(c); *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991) (stating that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes). Based on the Federal Rules, the Court has no choice but to accept Plaintiffs' factual allegations as true, conclude that Chairman Miller may act on behalf of the SCC,[2] and grant summary judgment to the Plaintiff.

## III. FACTS

Since 1956, Thomas Road Baptist Church, and its Pastor, Rev. Jerry Falwell, have provided a home for Christian prayer, worship, and education for the people of Lynchburg, Virginia, the nation, and the world. Today, the Trustees of Thomas Road Baptist Church own the Church and its sanctuary, which stands on 28.88 acres in a residentially-zoned area of the City of Lynchburg. Because the Trustees believe

1. Plaintiffs have not moved for a default judgment against Chairman Miller. Because of this fact, and because the Defendant has appeared to defend against the Complaint at least to some extent, *see* Rule 55(a), the Court shall decline to enter a default judgment against the Defendant *sua sponte.*

2. Although the Commission is composed of three members, *see* Va. Const. art. IX, § 1, Chairman Miller has never contended that he is *not* the proper person to be sued on behalf of the Commission. In fact, by arguing that the Commission must act in accordance Virginia law, Chairman Miller effectively has conceded that he may represent the entire SCC in this litigation. Furthermore, by not asserting the defense of sovereign immunity in any of his filings, he has waived that defense as well. *Cf. Croatan Books, Inc. v. Commonwealth of Virginia,* 574 F.Supp. 880, 884 (E.D.Va.1983).

the Church to have outgrown its current sanctuary, they have started to construct a new facility on approximately sixty acres elsewhere in the City.[3] The Trustees hold title to the land on which the current sanctuary stands, and seek to take title to the sixty-acre tract on which the new sanctuary will be located.

On March 3, 2002, the Congregation of Thomas Road passed a Resolution in which it concluded, in part, that "due to [a] discriminatory provision in the Virginia Constitution, the Church is ... not permitted to be incorporated." Despite this provision, the Congregation resolved to "incorporate as a Church within the Commonwealth of Virginia."

Two weeks later, on March 18, George McGann, a Thomas Road deacon, executed Articles of Incorporation on behalf of Thomas Road Baptist Church. Deacon McGann then submitted the Articles[4] to the SCC.

On March 26, Charles L. Rogers, an SCC attorney, replied to Deacon McGann. In his letter on behalf of the SCC, Mr. Rogers stated that, "We are returning the articles of incorporation for the following reasons: The last paragraph of Section 14 of Article IV of the Constitution of Virgi-nia prohibits the incorporation of churches and religious denominations in Virginia."

## IV. ANALYSIS

Since this Court has already dismissed the challenges to Va.Code Ann. §§ 57–12 and –15 and to Lynchburg City Code § 18–46 for mootness and lack of standing, the only provision relevant to this inquiry is Article IV, § 14(20) of the Constitution of Virginia. The Plaintiffs challenge the second paragraph of this provision, which reads, in relevant part, "The General Assembly shall not grant a charter of incorporation to any church or religious denomination ...." Va. Const. art. IV, § 14(20).

The Plaintiffs have filed suit pursuant to 42 U.S.C. § 1983, which provides that, "Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...." Because the SCC has refused to incorporate Thomas Road Baptist Church,[5] the Plaintiffs allege that the SCC has denied them their constitutional rights under the Free Exercise Clause of the First Amendment to the Constitution of the United States.

---

3. Entities affiliated with, but not part of, Thomas Road Baptist Church, own the land upon which clearing and construction of the new sanctuary has begun.

4. The Articles of Incorporation read as follows:
 1. The name of the corporation is Thomas Road Baptist Church.
 2. The corporation is organized for the purpose of operating a church.
 3. The corporation will have one class of voting members. The qualifications and rights of such members shall be determined by the board of deacons.
 4. Deacons shall be elected and appointed from time to time by the board of deacons.

5. The address of the corporation's initial registered office is 701 Thomas Road, Lynchburg, Virginia, 24502. The corporation's initial registered office is located in the City of Lynchburg, Virginia.
 6. The corporation's initial registered agent is George McGann, an individual who is a resident of the Commonwealth of Virginia and a deacon of the church.

5. Since the Plaintiffs have been denied a corporate charter, they have sustained an injury sufficient to achieve standing in this case. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As a result, Defendant's Motion for Summary Judgment must be denied.

## A.

The Free Exercise Clause of the First Amendment, applicable to the States via the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I; *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).

When adjudicating cases arising under the Free Exercise Clause, the Supreme Court of the United States has held that (1a) non-neutral laws which are (1b) not generally applicable must be (2a) narrowly tailored (2b) to advance a compelling governmental interest. *See Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217. On the other hand, a law "that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531, 113 S.Ct. 2217 (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)).

Therefore, the Court first asks whether § 14(20)'s prohibition on church incorporation is "neutral" or of "general applicability."

### i. Neutrality

■ The Court begins, as it must, with the text of the challenged provision. *Id.* at 533, 113 S.Ct. 2217. If the law lacks facial neutrality by "discriminat[ing] on its face," then the inquiry ends. *Id.* The Court would then proceed to a strict scrutiny analysis to determine whether the provision is tailored narrowly to achieve a compelling governmental interest. *Id.* at 531, 113 S.Ct. 2217. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable

from the language or context." *Id.* at 553, 113 S.Ct. 2217.

For example, in *Lukumi*, the Plaintiffs alleged that certain city ordinances, on their faces, discriminated against their religion. *Id.* at 527–28, 113 S.Ct. 2217. The *Lukumi* Plaintiffs practiced the Santeria faith, a religion which dates to the 19th century and blends elements of Roman Catholicism with traditional African religions. *Id.* at 524, 113 S.Ct. 2217. As part of their rituals, adherents of Santeria sacrifice animals, such as chickens, pigeons, doves, ducks, guinea pigs, goats, sheep, and turtles. *Id.* at 525–26, 113 S.Ct. 2217. In 1987, one such Santeria congregation announced plans to construct a church in the City of Hialeah, Florida. *Id.* In response, the Hialeah city council passed several criminal ordinances prohibiting ritualistic animal sacrifice within the limits of Hialeah. *Id.* at 527–28, 113 S.Ct. 2217. In a subsequent § 1983 lawsuit against the city, the *Lukumi* Plaintiffs asserted that the ordinances lacked neutrality because they included words such as "sacrifice" and "ritual." *Id.* at 533–34, 113 S.Ct. 2217. By using these words, the Plaintiffs argued, the city code facially discriminated against religion. *Id.* However, the Supreme Court of the United States concluded otherwise. *Id.* Because "sacrifice" and "ritual" could convey secular meanings in addition to religious ones, the Court reasoned, the challenged laws were not necessarily discriminatory on their faces. *Id.*

In this case, there is no doubt that Rev. Falwell and the Trustees challenge a provision that, unlike the Hialeah laws, "refers to a religious practice without a secular meaning discernible from the language or context." *Id.* at 531, 113 S.Ct. 2217. Article IV, § 14(20) of the Virginia Constitution reads, "The General Assembly shall not grant a charter of incorporation to any church or religious denomination. . . ." By

its terms, therefore, § 14(20) has no meaning within the secular context; it plainly refers to "a religious practice." Furthermore, given that other statutes allow any organization "with any lawful purpose," *see* Va.Code Ann. § 13.1–825, to incorporate, Article IV, § 14(20) also distinguishes churches and religious denominations from other groups in the broader context of Virginia law.

Because § 14(20) lacks facial neutrality, the Court concludes that it does not need to divine the legislative intent of the its drafters to discern whether they had a discriminatory purpose. *But see Lukumi,* 508 U.S. at 534–40, 113 S.Ct. 2217 (inquiring into the legislative purpose of an ordinance, which on its face did *not* discriminate against religion). In fact, such an inquiry would be a difficult one, given that "it is virtually impossible to determine the singular 'motive' of a collective body." *Id.* at 558, 113 S.Ct. 2217 (Scalia, J., concurring in part and concurring in the judgment). Indeed, this task would be even more difficult in this case, given that the provision at issue was likely the product of multiple motives. The Constitution of Virginia was drafted by the General Assembly, reviewed by a legislatively-chartered commission, and ratified by a referendum of the Commonwealth. *See, e.g.,* Virginia Commission on Constitutional Revision. The Constitution of Virginia: Report of the Commission on Constitutional Revision. (A.E. Dick Howard, Exec. Dir., Michie, 1969).

As a result, the Court will not conclude, as Plaintiffs have, that Article IV, § 14(20) derives from "a history of religious suppression in Virginia," evidences "extreme hostility to religion," "equates to government censorship of religion and religious ideas," or likens churches to "criminal organizations." Not only are these statements legal conclusions, the validity of

which this Court need not accept under Rule 56, they are also implausible.

To the contrary, Thomas Jefferson, the author of the Statute of Virginia for Religious Freedom to which § 14(20) traces its roots, believed freedom of religion to be " 'one of the natural rights of mankind.' " Charles B. Sanford, The Religious Life of Thomas Jefferson 30 (University Press of Virginia, 1995) (1984) (citation omitted). *See also* Peggy Gerstenblith. Associational Structures of Religious Organizations. 1995 B.Y.U. L.Rev. 439, 462. For Mr. Jefferson, any infringement of religious freedom constituted " 'an infringement of [a] natural right.' " *Id.* The more likely explanation for the existence of § 14(20) is that its drafters believed that state incorporation of individual churches was inconsistent with the principles of Mr. Jefferson's act.

In any event, the motivations of those who drafted and ratified § 14(20) are irrelevant to this inquiry. Because this provision lacks facial neutrality, the Court now turns to the second requirement of the Free Exercise Clause, which provides that any law burdening religious practice must be generally applicable. *See Lukumi,* 508 U.S. at 541, 113 S.Ct. 2217 (citing *Smith,* 494 U.S. at 879–81, 110 S.Ct. 1595).

ii. General Applicability

■ Because the concepts of neutrality and general applicability are interrelated, *see Lukumi,* 508 U.S. at 531, 113 S.Ct. 2217, the inquiries into each principle are similar. In order to be valid, laws which impact religion must be generally applicable; *i.e.,* government may not "impose special disabilities on the basis of religious views or religious status." *See Smith,* 494 U.S. at 877, 110 S.Ct. 1595 (citing *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978); *United States v. Ballard,* 322 U.S. 78, 86–88, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); *Fowler v. Rhode Is-*

*land,* 345 U.S. 67, 69, 73 S.Ct. 526, 97 L.Ed. 828 (1953)). To that end, the Supreme Court has upheld laws applicable to broad segments of the population, even if they have had the incidental effects of impacting the religious practices of certain individuals. *See generally Smith,* 494 U.S. at 879–80, 110 S.Ct. 1595 (citing *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (upholding generally applicable child labor laws against a mother for her religiously-motivated demands that her children distribute literature); *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (upholding Sunday closing laws against assertion that the laws burdened the religious practices of others whose own religions demanded that they refrain from work on other days); *Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (upholding the Selective Service System against the allegation that it violated free exercise by conscripting religiously-motivated conscientious objectors)).

Nevertheless, in upholding laws of general applicability, the Supreme Court of the United States has stated that the Free Exercise clause " 'protect[s] religious observers against unequal treatment.' " *Lukumi,* 508 U.S. at 542, 113 S.Ct. 2217 (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 148, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) (Stevens, J., concurring in judgment)). For example, in *McDaniel,* the Supreme Court

employed the Free Exercise Clause to invalidate a Tennessee state constitutional provision which prohibited ministers from serving as legislators, 435 U.S. at 621, 98 S.Ct. 1322, in part because the law discriminated against ministers on account of their religious "status, acts, and conduct." 435 U.S. at 627, 98 S.Ct. 1322. As in *McDaniel,* the Virginia constitutional provision in this case also discriminates on account of religious status. Unlike other groups in Virginia, members of "a church or religious denomination" are unable to incorporate the organization to which they belong.[6] They are therefore denied the benefits of incorporation[7] because of their religious status. As a result, § 14(20) is neither non-neutral, nor. generally applicable; it denies incorporation to defined individuals solely on account of their religion.

Having concluded that § 14(20) is neither neutral nor generally applicable, the Court now turns to a strict scrutiny analysis, an exercise which usually sounds the death knell for constitutionally suspect laws.

### B.

 A law burdening religious practice which is neither neutral nor generally applicable must survive strict judicial scrutiny; *i.e.,* the challenged laws must advance governmental " 'interests of the highest order,' *and* must be narrowly tailored in pursuit of those interests." *Lukumi,* 508

---

**6.** In contrast, *Lukumi* invalidated the anti-animal sacrifice ordinances, in part, because the laws prohibited conduct resulting from religious *belief,* rather than status. *Lukumi* 508 U.S. at 543, 113 S.Ct. 2217. *See also Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (invalidating Maryland constitutional requirement that public office holders declare their belief in God because it violated freedom of religious *belief.*). Although in this case it is unclear whether the Plaintiffs' desire to incorporate constitutes re-

ligiously-motivated conduct, § 14(20)'s incorporation prohibition nevertheless renders them unequal to others on account of their religious *status.* That disparate treatment constitutes enough to trigger the protections of the Free Exercise Clause.

**7.** The benefits of incorporation include limited liability, the ability to sue and be sued as an organization, and the power to enter into contracts. *See generally* Va.Code Ann. § 13.1.

U.S. at 546, 113 S.Ct. 2217 (quoting *McDaniel*, 435 U.S. at 628, 98 S.Ct. 1322) (emphasis added). "A law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Id.*

The strict scrutiny inquiry in this case is a short one. Because the Defendant has chosen not to defend the constitutional merits of Article IV, § 14(20), he, as a result, has presented no governmental interest—compelling or otherwise—to justify the existence of § 14(20). Therefore in this case, the Virginia constitutional provision does not withstand strict scrutiny, and must be invalidated.

### C.

■ Finally, the Court notes, as the *Amicus* American Civil Liberties Union has done, that § 14(20) by its terms prohibits only the *General Assembly* from incorporating a church or religious denomination. Nevertheless, the SCC contends that it is bound by this provision, both at the time it denied the Plaintiffs a corporate charter, and throughout the case. Furthermore, Virginia courts have held that if a public agency interprets an ambiguous law in a certain way for many years without the General Assembly having changed the law, the agency's construction controls. *See, e.g., South East Public Service Corp. v. Commonwealth of Virginia*, 165 Va. 116, 126, 181 S.E. 448, 452 (1935); *Nuttall v. Lankford*, 186 Va.

532, 543, 43 S.E.2d 37, 44 (1947). Here, the SCC has not only denied a charter to Rev. Falwell and the Trustees in this case, it states that it has had no choice in the matter, "[s]ince its creation nearly one hundred years ago." Therefore, since the SCC is depriving the Plaintiffs' civil rights pursuant to the Constitution of the Virginia, it is doing so "under color of" State law. *See* 42 U.S.C. § 1983 ( "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . .").

### V. CONCLUSION

Because Plaintiffs challenge a provision which is neither neutral, nor generally applicable, nor in furtherance of a compelling governmental interest, the Court holds that the portion of § 14(20) of Article IV of the Constitution of Virginia which reads, "The General Assembly shall not grant a charter of incorporation to any church or religious denomination . . . ," violates Plaintiffs' First Amendment rights to the free exercise of their religion made applicable to the States by the Fourteenth Amendment.[8]

An appropriate Order shall issue.

### ORDER

For the reasons articulated in the accompanying OPINION, it shall be, and hereby is

### ADJUDGED, ORDERED, AND DECREED

that:

1. The portion of § 14(20) of Article IV of the Constitution of Virginia which reads,

---

**8.** The Court reaches the same conclusion as the 1969 Virginia Commission on Constitutional Revision, which stated that:

Section 59 [a predecessor to § 14(20)] prohibits the General Assembly from allowing churches to be incorporated. The section singles out religious bodies from the benefits of a general law to which all other bodies are entitled. By so discriminating against churches, the section is probably unconstitutional under the First Amendment to the Federal Constitution, as in infringement of the free exercise of religion. *See* Virginia Commission on Constitutional Revision. The Constitution of Virginia: Report of the Commission on Constitutional Revision. 125 (A.E. Dick Howard, Exec. Dir., Michie, 1969).

"The General Assembly shall not grant a charter of incorporation to any church or religious denomination...," violates Plaintiffs' First Amendment rights to the free exercise of their religion made applicable to the States by the Fourteenth Amendment,

2. Plaintiffs' Motion for Summary Judgment shall be GRANTED,

3. Defendant's Motion for Summary Judgment shall be DENIED,

4. The State Corporation Commission of the Commonwealth of Virginia shall issue a corporate charter to Thomas Road Baptist Church in accordance with remaining applicable law, and

.5. This case shall be stricken from the docket.

The Clerk of Court is directed to send certified copies of this OPINION and ORDER to all counsel of record.